## UNITED STATES U.S. DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- X

GRANDER HOLDINGS, INC., GRANDER   :
HOLDINGS, INC. 401K PSP, BRAUSER   :
FAMILY TRUST 2008, MICHAEL   :
BRAUSER, DANIEL BRAUSER,   :
BENJAMIN BRAUSER, GREGORY   :
BRAUSER, and JOSHUA BRAUSER,   :
                        :
       Plaintiffs,   :
                        :
  -v.-   :
                        X

JOHN DAVID HANSEN and GREGORY P.
HANSON,

       Defendants.

Case No. 1:20-cv-8618-AKH

**ANSWER TO FIFTH AMENDED COMPLAINT**

---------------------------------------------------- 

      Plaintiffs, Grander Holdings, Inc. ("Grander Holdings"), Grander Holdings, Inc. 401k PSP ("Grander Holdings 401K"), Brauser Family Trust 2008 ("Brauser Family Trust"), Michael Brauser ("M. Brauser"), Daniel Brauser ("D. Brauser"), Benjamin Brauser ("B. Brauser"), Gregory Brauser ("G. Brauser"), and Joshua Brauser ("J. Brauser") (collectively "Plaintiffs"), by and through undersigned counsel, sue Defendants, John David Hansen ("Hansen") and Gregory P. Hanson ("Hanson") (collectively, the "Defendants"), and allege:

## <u>JURISDICTION, VENUE, AND PARTIES</u>

    1.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and more than $75,000 is at issue, exclusive of interest, costs and fees.

    **ANSWER:** Defendants admit that the Court has subject-matter jurisdiction.

    2.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

    **ANSWER:** Defendants admit that venue is proper in this Court.

3.     Personal jurisdiction over Defendants exists because Defendants regularly engaged in business and transacted business in New York, as discussed below, and because Defendants have consented to personal jurisdiction in New York.

**ANSWER:** Defendants deny the allegations in Paragraph 3, except state that (i) the Court has personal jurisdiction over Defendants; and (ii) Defendants consented to personal jurisdiction in this Court.

4.     Numerous investment documents, including the August 11, 2017, Securities Purchase Agreement and April 27, 2018, Securities Purchase Agreement, among others,  signed by the Plaintiffs in connection with the investments at issue state, in sum or substance:

> Each party hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in the City of New York, Borough of Manhattan, for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper.

**ANSWER:** Defendants deny the allegations in Paragraph 4, except state that Paragraph 4 purports to selectively quote and characterize investment documents and securities purchase agreements, to which Defendants refer the Court for their contents.

5.     Several of the investment documents signed by the Plaintiffs make clear that this forum-selection clause applies to claims "whether brought against a party hereto or its respective affiliates, directors, officers, shareholders, partners, members, employees or agents," which includes Defendants.

**ANSWER:** Defendants deny the allegations in Paragraph 5, except state that Paragraph 5 purports to selectively quote and characterize investment documents, to which Defendants refer the Court for their contents.

6.      During the relevant period, Defendants spoke with M. Brauser or other investors including without limitation Barry Honig ("Honig") in New York and elsewhere, who Defendants knew to be relaying such communications to other investors including the Plaintiffs on several occasions to solicit investments that are at issue in this action. In addition to simply having knowledge of the foregoing, Defendants intended that same occur and knew or should have known that Plaintiffs would rely upon them when deciding whether to invest in MabVax.

**ANSWER:** Defendants deny the allegations in Paragraph 6, except state that (i) Defendants at times spoke with members of Plaintiffs' illegal investor group, including in New York; and (ii) Paragraph 6 purports to characterize Plaintiffs' claims, to which no response is required.

7.      The claims alleged herein arise from the investment documents making clear that New York is the appropriate forum, and the causes of action arise in part from these solicitations, which took place in New York. Moreover, MabVax, at Defendants' direction, regularly transacted business in New York, and entered into agreements with entities in New York, including with Cold Spring Harbor Laboratory, a nonprofit New York State education corporation, and Y-MABS Therapeutics, Inc., which has a principal place of business in New York, New York. Also, an investigative site for MabVax's clinical trials was Memorial Sloan Kettering Cancer Center in New York City.

**ANSWER:** Defendants deny the allegations in Paragraph 7, except state that (i) Defendants at times conducted business in New York; (ii) Paragraph 7 purports to characterize Plaintiffs'

claims, to which no response is required; and (iii) Memorial Sloan Kettering Cancer Center in New York City was an investigative site for MabVax's clinical trials.

8.      Plaintiff, Grander Holdings, is a company that was incorporated and exists under the laws of the State of Florida with its principal place of business located in Palm Beach County, Florida. Michael Brauser has at all times material been its President; and Grander Holdings is the Plan Administrator for the Grander Holdings 401K PSP.

**ANSWER:** Defendants deny the allegations in Paragraph 8, except state (i) Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and deny the allegations on that basis; and (ii) the allegations in Paragraph 8 state legal conclusions to which no response is required.

9.      Plaintiff, Brauser Family Trust, is an irrevocable trust formed under the laws of the State of Florida. B. Brauser has at all times material been its Trustee; and he continues to be its Trustee. As B. Brauser brings this action as the Trustee of the Brauser Family Trust, he does so as a citizen of the State of Florida.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 9 because the Court dismissed all of Brauser Family Trust's claims with prejudice.

10.     Plaintiff, M. Brauser, is a citizen of Broward County, Florida.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 10 because the Court dismissed all of M. Brauser's claims with prejudice.

11.     Plaintiff, D. Brauser, is a citizen of Broward County, Florida.

**ANSWER:** Defendants deny the allegations in Paragraph 11, except state that (i) Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in

Paragraph 11 and deny the allegations on that basis; and (ii) the allegations in Paragraph 11 state a legal conclusion to which no response is required.

12.     Plaintiff, B. Brauser, is a citizen and resident of Palm Beach County, Florida.

**ANSWER:** Defendants deny the allegations in Paragraph 12, except state that (i) Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether B. Brauser is a citizen and resident of Palm Beach County, Florida, and deny the allegations on that basis; and (ii) the allegations in Paragraph 12 state a legal conclusion to which no response is required.

13.     Plaintiff, G. Brauser, is a resident of Palm Beach County, Florida.

**ANSWER:** Defendants deny the allegations in Paragraph 13, except state that (i) Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether G. Brauser is a resident of Palm Beach County, Florida, and deny the allegations on that basis; and (ii) the allegations in Paragraph 13 state a legal conclusion to which no response is required.

14.     Plaintiff, J. Brauser, is a resident of Palm Beach County, Florida.

**ANSWER:** Defendants deny the allegations in Paragraph 14, except state that (i) Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether J. Brauser is a resident of Palm Beach County, Florida, and deny the allegations on that basis; and (ii) the allegations in Paragraph 14 state a legal conclusion to which no response is required.

15.     Defendant, John David Hansen, was, at all relevant times, President, CEO, and Chairman of the Board of Directors of MabVax. Hansen signed many of MabVax's public filings, including the January 30, 2018, Form 8-K, its February 6, 2018, and May 3, 2018, Form 8- Ks

announcing the Series M and N Private Placement Financings. He is domiciled in California and on information and belief, was in California at all times material when Plaintiffs agreed to purchase all securities identified herein. Hansen personally solicited the one or more of the Plaintiffs, within and outside of California, on multiple occasions to make investments into the company. Hansen also had personal knowledge of all the relevant material non-public information, was responsible for public disclosures, and otherwise had control over MabVax's actions alleged herein.

**ANSWER:** Defendants deny the allegations in Paragraph 15, except state that (i) Hansen was MabVax's CEO; (ii) Paragraph 15 purports to characterize certain MabVax SEC filings, to which Defendants refer the Court for their contents; (iii) Hansen at times spoke with members of Plaintiffs' illegal investor group about investing in MabVax; and (iv) the fifth sentence of Paragraph 15 calls for a legal conclusion to which no response is required.

16.    Defendant, Gregory P. Hanson, was, at all relevant times, the Chief Financial Officer ("CFO") of MabVax. Hanson signed many of the SEC filings at issue here and he was the MabVax officer who primarily corresponded by phone and email with Plaintiffs, including without limitation concerning the Series M and N Financings, and otherwise had control over MabVax's actions alleged herein. He is domiciled in California, and on information and belief, was in California at all times material when Plaintiffs agreed to purchase all securities identified herein.

**ANSWER:** Defendants deny the allegations in Paragraph 16, except state that (i) Hanson was MabVax's CFO; (ii) Paragraph 16 purports to characterize certain MabVax SEC filings, to which Defendants refer the Court for their contents; (iii) Hanson lives in California; and (iv) Hanson at times spoke with members of Plaintiffs' illegal investor group.

## GENERAL ALLEGATIONS

### A.      Introduction

17.      MabVax was originally incorporated in Delaware in 1988 under the name Terrapin Diagnostics, Inc. It was renamed Telik, Inc., ten years later; and it again changed its name to MabVax in September 2014 as a result of a merger with MabVax Therapeutics, Inc. As a Delaware company at all times material, it and its officers, including the Defendants, were subject to the fiduciary provisions of the Delaware General Corporate Law.

**ANSWER:** Defendants admit the allegations in Paragraph 17, except state that the third sentence in Paragraph 17 states a legal conclusion to which no response is required.

18.      Because MabVax was a publicly traded company at all times material to the claims alleged herein, it regularly made public filings to the SEC. As executives of a publicly traded company, Defendants knew or should have known that investors such as Plaintiffs would rely on MabVax's public filings.

**ANSWER:**  Defendants deny the allegations in Paragraph 18, except state (i) MabVax was a publicly traded company and publicly filed documents with the SEC; (ii) Paragraph 18 purports to characterize certain MabVax SEC filings, to which Defendants refer the Court for their contents; and (iii) Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiffs' activities and deny the allegation on that basis.

19.      From and throughout 2014 through 2018, MabVax regularly described itself in public documents as a "clinical-stage biotechnology company focused on the development of antibody-based products and vaccines to address unmet medical needs in the treatment of cancer."

**ANSWER:**  Defendants deny the allegations in Paragraph 19, except state that Paragraph 19 purports to selectively quote and characterize public documents, to which Defendants refer the Court for their contents.

20.     MabVax took the position at all times material that it "cannot earn product revenue until it (or its collaborative partners) complete clinical trials, obtain regulatory approval, and successfully commercialize one or more of its products. As a result, the company has incurred, and will likely incur, substantial operating losses."

**ANSWER:** Defendants deny the allegations in Paragraph 20, except state that Paragraph 20 purports to selectively quote from public filings, to which Defendants refer the Court for their contents.

21.     At all times material, MabVax further stated that "to continue its vitally important work, MabVax has raised, and if it can carry on, will have to continue to raise money through debt and equity financing."

**ANSWER:** Defendants deny the allegations in Paragraph 21, except state that Paragraph 21 purports to selectively quote from public filings, to which Defendants refer the Court for their content.

22.     Plaintiffs collectively invested more $3,100,000 in MabVax between August 2016 and 2018.

**ANSWER:** Defendants deny the allegations in Paragraph 22.

23.     MabVax's employee headcount dwindled from sixteen to six during 2017 and 2018, with Defendants at all times material the principal two remaining employees. In light of its diminutive size, Defendants were intimately familiar with MabVax's operations, including the status of its clinical trials and the issuance of information to the public regarding same.

**ANSWER:** Defendants deny the allegations in Paragraph 23, except state that Defendants were MabVax officers and familiar with its operations.

24.     As is often the case, Plaintiffs invested in a company (MabVax) that operated in a field in which they were not experts. Because of this, among other reasons, Defendants knew that investors including Plaintiffs would and did rely on the company's public filings, the views of sophisticated institutional investors, and statements of the company's officers and directors (including Defendants), and that Plaintiffs would expect such public filings, views, and statements to be complete and truthful when made.

**ANSWER:**  Defendants deny the allegations in Paragraph 24, except state that they lack knowledge and information sufficient to form a belief as to Plaintiffs' knowledge, expectations, and activities and deny the allegations on that basis.

25.     When Plaintiffs invested in MabVax, they did so believing that the investments would be used to—as MabVax puts it—" continue its vitally important work."

**ANSWER:**  Defendants deny the allegations in Paragraph 25, except state that they lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 25 and deny the allegations on that basis.

26.     Instead, Hansen, as MabVax's President and Chief Executive Officer, and Hanson, as its Chief Financial Officer, knowingly and willingly mislead Plaintiffs in order to secure and retain Plaintiff's investments largely to support and sustain Defendants' own excessive compensation. In so doing, they received millions of Dollars ostensibly to bring a promising cancer treatment to market while instead primarily lining their own pockets. For example, during the relevant time period, Defendants' total combined compensation including salary, equity grants, and other benefits was over $5,200,000[1]—vastly more than the average compensation for

---

[1] In 2016, Hansen caused MabVax to compensate him $989,257 ($418,438 salary, $141,400 bonus, $393,702 options, $35,717 "other comp"). In 2017, he caused MabVax to compensate him $2,165,915 ($427,876 salary, $448,500 in stock, $1,252,905 options, $36,634 "other comp"); and in 2018, Hansen caused MabVax to pay him a salary of $430,000. In 2016, Hanson caused MabVax to compensate him $453,602 ($276,014 salary, $62,790 bonus, $99,743

similarly-situated executives of early-stage companies, and much more reflective of companies in the Russell 2000 with assets between 10 and 125 times the amount of MabVax.[2]

**ANSWER:**  Defendants deny the allegations in Paragraph 26, Footnote 1, and Footnote 2, except state that (i) Paragraph 26 purports to characterize Plaintiffs' claims to which no response is required; (ii) Footnote 1 purports to selectively quote and characterize SEC filings to which Defendants refer the Court for their contents; and (ii) Footnote 2 purports to selectively quote and characterize a public survey to which Defendants refer the Court for its contents.

27.    Despite the Defendants causing MabVax to pay themselves excessive compensation, MabVax earned no significant revenue while they were in control or create any promising cancer therapies. Their combined compensation was on average one-third of the net cash that MabVax received through its financing endeavors between 2015 and the third quarter of 2018, however.

**ANSWER:** Defendants deny the allegations in Paragraph 27, except state that MabVax, as a clinical-stage biotechnology company, did not earn significant revenue.

**B.    MabVax Goes Public**

28.    According to Mabvax, it had "reached the point where its committed existing private investors, founders, friends, and family could no longer shoulder the crushing expense of bringing new cancer treatments to market."

---

options, $15,055 "other comp"). Hanson similarly caused MabVax to compensate him $848,201 ($309,312 salary, $277,016 stock, $224,945 options, $36,928 "other comp") in 2016 and a salary of $317,386 in 2018. Unfortunately, different public filings by MabVax include different compensation numbers for the Defendants.
[2] For example, in "The BDO 600", a 2016 survey of CEO and CFO compensation practices, BDO found that the average compensation paid to CEOs of companies with $100M to $500M revenues and $1.25B in assets was $2,324,230 in 2015, similar to Hansen's 2017 total compensation of $2,165,915. For CFOs, BDO found the average total compensation was $964,824, similar to Hanson's 2017 total compensation of $848,201. Of course, MabVax's revenues and assets were nowhere close to $100M.

**ANSWER:**  Defendants deny the allegations in Paragraph 28, except state that Paragraph 28 purports to selectively quote and characterize from a MabVax legal filing, to which Defendants refer the Court for its contents.

29.     MabVax—with Defendants at the helm—attempted to solve its liquidity problems by merging with an already-public company, Telik, Inc. ("Telik"), on July 8, 2014, in an all-stock transaction that included the issuance to MabVax's existing shareholders and warrant-holders preferred stock in the merged company and warrants to acquire additional shares of common stock to be issued, among other things.

**ANSWER:**  Defendants deny the allegations in Paragraph 29, except state that MabVax merged with Telik in 2014 in an all-stock transaction.

30.     While Telik had previously been listed on the NASDAQ stock exchange, it was delisted effective as market open on July 10, 2014.

**ANSWER:**  Defendants deny the allegations in Paragraph 30, except state that (i) Defendants admit that Telik had previously been listed on the NASDAQ; and (ii) Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that Telik was delisted as of market open on July 10, 2014.

**C.     The Importance of HuMab-5B1**

31.     MabVax's HuMab-5B1 antibody was at the center of its and Defendants' campaign to attract investors, including Plaintiffs. On July 31, 2015, MabVax referred to HuMab-5B1 as its "lead antibody development program." In fact, MabVax stated in public filings between May and August 2016 that it was "substantially dependent on the success of our product candidates, HuMab-5B1 and 89ZR-HuMab-5B1."

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph

31 because the Court dismissed all related claims with prejudice. To the extent a response is required, Defendants deny the allegations in Paragraph 31, except state that (i) MabVax's HuMab-5B1 antibody was a valuable asset; and (ii) Paragraph 31 purports to selectively quote from MabVax's public filings, to which Defendants refer the Court for their contents.

32.     Defendants repeatedly issued statements about and remained informed regarding the then-current status of MabVax's HuMab-5B1 clinical trials.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 32 because the Court dismissed all related claims with prejudice. To the extent a response is required, Defendants deny the allegations in Paragraph 32, except state that Defendants made certain statements based on their understanding of MabVax's clinical trials.

33.     Because HuMab-5B1 was MabVax's "lead antibody development program," Defendants knew or should have known at all times material that results from its HuMab-5B1 antibody trial in pancreatic cancer ("Phase 1") were material to investors, including the Plaintiffs.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 33 because the Court dismissed all related claims with prejudice.

34.     MabVax's consistent release of updates regarding the Phase 1 clinical trials for HuMab-5B1[3] shows this to be the case because the Phase 1 results went directly to MabVax's ability to continue as a going concern. Without positive Phase 1 data, MabVax would not be able to solicit future investment because MabVax would, in essence, never be reasonably expected to have a viable product. The success or failure of the Phase 1 trial was paramount to MabVax's financial success (and thus the success of any investment in the company); and any negative results were unquestionably material to all investors, including Plaintiffs.

---

[3] For example, MabVax released statements on December 1, 2015, January 28, 2016, March 18, 2016, March 21, 2016, and May 9, 2016.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 34 because the Court dismissed all related claims with prejudice.

35.     As Hansen publicly acknowledged, any results from the Phase 1 trial—interim or otherwise—were material to investors including Plaintiffs. In an interview with "Stock News Now" on August 22, 2016, which was published on YouTube on September 6, 2016, Hansen stated the following regarding interim results of the Phase 1 trial:

> But we also thought that it was important to give patients and investors and potential partners an early glimpse into what we're seeing, provided that we're seeing something substantial and important, something that we can look back on and day, "yes we validated that." And so we're looking for, somewhere in the third quarter of this year, so not very far away, probably in the month of September, we think we'll have enough patients enrolled in each of those trials to say something about where we are and where we're headed, and *we think those will be a very sort of interim milestone.* (emphasis added).

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 35 because the Court dismissed all related claims with prejudice.

36.     Hansen also acknowledged the importance of the results from the Phase 1 trial by causing MabVax to publish them in public filings. In an S-1 filed on August 3, 2016, that Hansen signed, MabVax stated the following regarding the Phase 1 results:

> In the dose escalation portion of the trial, patients enrolled have locally advanced or metastatic pancreatic cancer who have failed other therapies. Nine patients treated to date have been observed as tolerating initial dosages of the drug reasonably well. Infusion reactions, which are not uncommon with protein drugs, have been the most frequent adverse events related to drug exposure and have been addressed by slowing the infusion rate. Of the nine patients who have been dosed to date, five have been treated for three or more months and investigator observations have noted stable disease for a subset of those patients.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 36 because the Court dismissed all related claims with prejudice.

37.     As Defendants knew or should have known, although the HuMab-5B1 antibody trial Phase 1 results were material to investors, those without a sophisticated understanding of the

science behind MabVax's antibody program, including Plaintiffs, had no basis to understand whether these results were promising or catastrophic to MabVax's future. Because five of nine patients that had "locally advanced or metastatic pancreatic cancer who ha[d] failed other therapies" were apparently treated for "three or more months" with notations of "stable disease" Plaintiffs believed that the results were positive—a reasonable belief given the circumstances.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 37 because the Court dismissed all related claims with prejudice.

38.     In a press release published on September 19, 2016, MabVax published further Phase 1 results. Among other things, the press release stated:

> "To date 13 patients, most with stage 3 and 4 metastatic pancreatic cancer, have been enrolled after having exhausted all other standard of care therapies," stated President and CEO J. David Hansen. "Based on assessments conducted with available unaudited data to date from these patients, we are seeing a pharmacokinetic profile for MVT-5873 that is similar to other monoclonal antibody therapeutics. We are actively dosing patients and plan on generating sufficient safety data in this portion of the phase I trial to allow the initiation, during the fourth quarter of this year, of the second part of the phase I trial where MVT-5873 will be administered in front line therapy in combination with a current standard of care chemotherapy."

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 38 because the Court dismissed all related claims with prejudice.

39.     Again, as Defendants knew or should have reasonably expected, although the Phase 1 results were material, ordinary investors including Plaintiffs had no basis other than MabVax's routine positive reporting, to understand whether these results were promising or catastrophic to MabVax's future.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 39 because the Court dismissed all related claims with prejudice.

40.     Defendants accordingly knew or should have known that Plaintiffs would rely entirely on Defendants' public statements and the analysis of sophisticated institutional investors in determining whether the Phase 1 results were, in fact, promising to MabVax's future. Defendants also knew or should have known that Plaintiffs' continuing faith, and willingness to invest in MabVax, was predicated on Defendants' representations that the "promising" Phase 1 results were indicative of the future health and profitability of MabVax. It was clear that negative Phase 1 results would cause significant financial hardship for MabVax.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 40 because the Court dismissed all related claims with prejudice.

### D.     The Oxford Loan

41.     Defendants knew or should have known that the state of MabVax's finances was material to investors including Plaintiffs because MabVax was a "clinical stage" company.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 41 because the Court dismissed all related claims with prejudice.

42.     The amount of financing that an early-stage biotechnology company like MabVax has already secured is material to investors because such companies often do not generate any revenue (as Defendants will readily admit). Companies like MabVax thus rely on financing to keep them operating until their products are either sold or licensed to other companies or reach the consumer market. If such early-stage biotechnology company runs out of financing, it will likely cease to exist. Defendants, as experienced executives of a publicly traded early-stage biotechnology company, knew or should have known this.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 42 because the Court dismissed all related claims with prejudice.

43.     Because they knew or should have known that non-institutional investors who they actively solicited for investment (such as Plaintiffs) would rely on MabVax's public filings and the analysis of sophisticated institutional investors in determining whether the Phase 1 results were promising to MabVax's future, Defendants went to great lengths to conceal that its primary debt financier had refused to provide additional financing when requested because it believed the Phase 1 results to not be positive.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 43 because the Court dismissed all related claims with prejudice.

44.     According to a January 19, 2016 8-K, on January 15, 2016, MabVax and Oxford Finance LLC ("Oxford"), as collateral agent and lender, entered into a Loan and Security Agreement (the "Loan Agreement") that provided senior secured term loans to MabVax in an aggregate principal amount of up to $10,000,000, subject to the terms and conditions set forth therein.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 44 because the Court dismissed all related claims with prejudice.

45.     MabVax received initial funding of $5,000,000; but Oxford was not automatically bound to fund the second $5,000,000 tranche.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 45 because the Court dismissed all related claims with prejudice.

46.     Instead, the Loan Agreement permitted Oxford to decline funding the second $5,000,000 portion of the loan unless MabVax met two conditions: (a) MabVax was re-listed onto the NASDAQ Stock Market or New York Stock Exchange; and (b) MabVax received "positive interim data on the Phase 1 [trial]."

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 46 because the Court dismissed all related claims with prejudice.

47.     MabVax's entitlement to the second tranche would expire on September 30, 2016.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 47 because the Court dismissed all related claims with prejudice.

48.     Oxford is a sophisticated institutional investor. As explained on its website:

> For over 20 years, Oxford Finance has enjoyed a reputation for being far more than a lending institution. Our success is founded upon enduring relationships within an industry we know intimately well. Clients and partners alike value our deep expertise, our drive to share success, and the service and flexibility we have provided to hundreds of life sciences and healthcare services companies across the globe. In recent years, Oxford has originated over $6 billion in loans, with credit facilities ranging from $5 million to $150 million.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 48 because the Court dismissed all related claims with prejudice.

49.     Investors including Plaintiffs thus eagerly awaited news Oxford's decision regarding whether to provide the second tranche of $5,000,000 to MabVax. If Oxford rejected MabVax's request to fund the second tranche if and when asked, it would mean that, contrary to MabVax's regular positive reports, "positive interim data on the Phase 1 trial" did not exist—an indictment of MabVax's "lead antibody program" that would be catastrophic for the Company's prospects and its ability to obtain future financing.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 49 because the Court dismissed all related claims with prejudice.

50.     Upon information and belief, Defendants knew or should have known at all times material that investors, including Plaintiffs, awaited Oxford's decision and were prepared to rely on it in either further investing in MabVax or refusing to invest and instead sell their shares.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 50 because the Court dismissed all related claims with prejudice.

        1. <u>Defendants Made Material Misstatements and Omissions Concerning the Oxford Loan</u>.

51. MabVax met the first condition to pull down the second $5,000,000 tranche on August 17, 2016, when it was re-listed on the NASDAQ Stock Exchange.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 51 because the Court dismissed all related claims with prejudice.

52. Like any objectively reasonable investor, Plaintiffs thus expected that if Mabvax requested this second tranche of the Oxford loan, it would be funded unless there was not "positive interim data on the Phase 1."

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 52 because the Court dismissed all related claims with prejudice.

53. Around the same time as MabVax was re-listed, Defendants solicited additional investment in MabVax through a Series F financing round.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 53 because the Court dismissed all related claims with prejudice.

54. On information and belief, by the time Defendants solicited M. Brauser to invest, Defendants already knew that the Phase 1 results were not positive or that Oxford had rejected requests to fund the second $5,000,000 tranche.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 54 because the Court dismissed all related claims with prejudice.

55.     Crucially, in August 2016, Defendants already were representing to investors, including directly to M. Brauser, that the receipt of the second $5,000,000 tranche from Oxford was "a sure thing" despite being apprised of facts to the contrary not available to the public.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 55 because the Court dismissed all related claims with prejudice.

56.     Grander Holdings 401k purchased 207,900 shares of Series F Preferred Stock and warrants to purchase the same number of Common Stock from MabVax on or about August 17, 2016.

**ANSWER:** Defendants state no response is required to the allegations in Paragraph 56 because the Court dismissed all related claims with prejudice.

57.     On September 6, 2016, MabVax filed a presentation with the SEC that Hansen gave and which was attached to an 8-K that Hansen signed. It included a slide titled "Financial Information and Market Statistics" that showed MabVax's "Cap Table":

## Financial Information and Market Statistics

| Cap Table (In Mils.) | | |
|---|---|---|
| Before Financing | Pro Forma After Financing | Remarks - All Numbers Stated Post-Reverse Split |
| $ 3.0 | $ 11.4 | Cash and cash equivalents (as of June 30, 2016) |
| $ 1.0 | $ 1.0 | Monthly burn rate |
| $ 5.0 | $ 5.0 | Debt - Oxford Finance LLC Before Second Tranche* |
| 4,235,339 | 5,641,350 | Common stock outstanding |
| - | 324,727 | Most favored nations April 2015 PIPE financing |
| 2,165,190 | 2,165,190 | Common equivalents - Series D Preferred Stock** |
| 450,446 | 519,751 | Common equivalents - Series E Preferred Stock** |
| - | 665,281 | Common equivalents - Series F Preferred Stock** |
| 6,850,975 | 9,316,299 | Total common and common equivalents |
| 1,199,505 | 5,124,144 | Total warrant shares |
| $ 9.87 | $ 6.84 | Average warrant exercise price (expire from Oct. 2017-Jan. 2021) |

Principal Stockholders: OPKO/Dr. Phil Frost, others 4.99% voting blockers, RTP Venture Fund

**Market Statistics:**

| | | |
|---|---|---|
| Market Cap: | $ 28,714,472 | Based solely on common stock outstanding |
| Share Price: | $ 5.09 | Closing price on September 2, 2016 |
| Avg. Volume: | 18,690 | Volume on Nasdaq August 19, 2016 |
| Ticker Symbol: | MBVX | Nasdaq Capital Market |

* Issued Jan 15, 2016, 4-yr term, int. only 1st yr, straight amort. Of principal next 3 yrs
** Series D, E and F Preferred Stock include 4.99% voting blockers, no price resets or look back provisions or special dividends, $0.01 per share liquidation preference



29

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 57 because the Court dismissed all related claims with prejudice.

58.     The Cap Table showed MabVax having $3 Million cash and cash equivalents on hand as of June 30, 2016, "before financing" with a burn rate of $1 Million per month. After financing, the cash on hand rose to $11.4 Million. It further provided that MabVax had at that time $5,000,000 in debt from Oxford, but that was "Before Second Tranche."

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 58 because the Court dismissed all related claims with prejudice.

59.     Three days prior—on September 3, 2016—MabVax and Defendants sent out a shareholder letter to investors that Hansen executed. They also included a copy of this letter in MabVax's 8-K, filed with the SEC on September 7, 2016. This letter stated unequivocally that as

of September 3, 2016, MabVax had "12 months' operating capital to complete Phase 1 milestones."

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 59 because the Court dismissed all related claims with prejudice.

60.    That statement was false in light of the figures set forth in the "Cap Table" unless MabVax had obtained or still could have obtained the additional $5,000,000 loan from Oxford because MabVax would have run out of operating capital before the twelve months that Hansen referenced in the shareholder letter had past.

**ANSWER:**  Defendants state that no response is required as to the allegations in Paragraph 60 because the Court dismissed all related claims with prejudice.

61.    As a result, the most reasonable inference is that Hansen was clearly referring in his shareholder letter to the second tranche from Oxford. This is especially true because he also stated in the letter that MabVax had in place "all the ingredients required for long-term success and value creation for our stock."

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 61 because the Court dismissed all related claims with prejudice.

62.    Defendants' deception concerning the Oxford Loan were not limited to the shareholder letter and "Cap Table;" and each misstatement and omission build on the prior one to the point that investors, including Plaintiffs, had no reason to believe anything other than that the second tranche was at all times material available to MabVax before September 30, 2016, when MabVax's contingent rights to draw down the second $5,000,000 would expire.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 62 because the Court dismissed all related claims with prejudice.

63.     In an interview with "Stock News Now" on August 22, 2016, which was published only days after the shareholder letter was transmitted on YouTube on September 6, 2016, Hansen (1) acknowledged the importance of MabVax's funding through Phase 1; and (2) stated that MabVax "certainly [could] pull down" the $5,000,000 loan from Oxford:

> We were able to finalize on 9.4 million dollars [in a recent equity raise], and so for us that's a substantial amount of money. If we combine that with our three million dollars that we had in our bank account at the end of the first quarter that's now 12, *plus we do have a debt financing arrangement in place with Oxford Finance and we certainly can pull down an additional five million dollars in debt financing here*, we hope in the next short period of time. *So that would certainly give us more than enough cash to reach our—what are considered to be our most important milestones—which are the end of the phase one clinical trials in the mid-term next year.* (emphasis added).

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 63 because the Court dismissed all related claims with prejudice.

64.     Also, on September 13, 2016, Hansen caused an 8-K to be filed which included an investor presentation titled, "Immuno-Oncology Products Discovered From the Human Immune Response to Cancer." Under the KEY HIGHLIGHTS section, Hansen stated the following material facts: (1) Uplist and interim data readout triggers $5M in additional debt financing from Oxford, and (2) Pull down expected fourth quarter.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 64 because the Court dismissed all related claims with prejudice.

65.     In early September 2016, Defendants met in person with representatives from Oxford, during which meeting Defendants relayed the then-current interim data to Oxford and requested that Oxford fund the second tranche. Oxford reviewed the data that Defendants presented; and it declined to fund the second tranche on the basis of that data.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 65 because the Court dismissed all related claims with prejudice.

66.     At the time that MabVax and Hansen represented that MabVax "expected" to "pull down" the second tranche in the "fourth quarter," he know or should have known that MabVax had either lost its right to such funds because Oxford had already rejected same or because the company would not be able to demonstrate "positive interim data on the Phase 1 [trial], as the loan documents required. His expectations were instead just a fantasy—which Hansen unquestionably must have known to be the case.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 66 because the Court dismissed all related claims with prejudice.

2.     Defendants Concealed Oxford's Refusal to Provide the Second Tranche.

67.     Between September 6, 2016, and September 30, 2016—the expiration date for the second tranche of the Oxford Loan—MabVax did not make any public statements regarding their request for the second $5,000,000 tranche from Oxford and Oxford's subsequent denial of such request.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 67 because the Court dismissed all related claims with prejudice.

68.     During this time, MabVax's and Defendants' misstatements and omissions misled Plaintiffs to mistakenly believe that MabVax could and would secure the second tranche of $5,000,000 from Oxford. Further, Plaintiffs had no idea that, upon information and belief, the Phase 1 results were in fact not positive, as MabVax and Defendants had only disclosed that material non-public information to Oxford.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 68 because the Court dismissed all related claims with prejudice.

69.     In fact, the first new public statement made by the Company regarding Oxford was not until November 7, 2016, in a 10-Q filing, almost *six weeks after the expiration date.* The Company's November 7, 2016 10-Q—signed by both Defendants—stated simply that:

> [t]he option to fund the second tranche of $5,000,000 . . . was upon the Company achieving positive interim data on the Phase 1 HuMab-5B1 antibody trial in pancreatic cancer and successfully uplisting to either the NASDAQ Stock Market or NYSE MKT on or before September 30, 2016. *The option for the Term B Loan expired on September 30, 2016.* The Company is not pursuing completion of any additional debt financing with Oxford Finance, LLC at the present time." In later filings, the Company stated only: "The option for the . . . Loan expired on September 30, 2016." (emphasis added)

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 69 because the Court dismissed all related claims with prejudice.

70.     What MabVax and Defendants materially omitted from this statement and the others set forth below was—as they obviously knew given their participation in the meeting with Oxford—that MabVax had already attempted to secure the second tranche of $5,000,000; and Oxford had denied their request due.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 70 because the Court dismissed all related claims with prejudice.

71.     MabVax and Defendants concealed Oxford's rejection because, as an early-stage biotechnology company, Defendants knew that any kind of "bad press" would be disastrous to MabVax's ability to raise future funding. A sophisticated investor like Oxford rejecting the data on MabVax's "lead antibody development program" would be just that. Despite the positive reports in MabVax's public filings, Oxford clearly did not agree that there was "positive interim data" sufficient to provide the funding.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 71 because the Court dismissed all related claims with prejudice.

72.     MabVax and Defendants knew or should have known that this information was material to investors. Moreover, MabVax's and Defendants' statement that the loan "expired" was clearly intended to, and did, mislead Plaintiffs and other investors to believe that Oxford did not refuse to provide the second tranche. Plaintiffs, like other investors, were led to believe that Oxford did not reject MabVax. *This was not the case, however*. As MabVax and Defendants knew and the Plaintiffs later learned, a request **was** made and **was** rejected. Plaintiffs had a right to know this material information; but MabVax and Defendants purposely withheld it all the while soliciting additional investments from Plaintiffs.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 72 because the Court dismissed all related claims with prejudice.

73.     Moreover, in an email on April 3, 2017—over six months after Oxford rejected MabVax—Hansen represented directly to Brauser that "the positive results from our clinic programs are not an illusion" despite the lack of positive results regarding the HuMab-5B1 antibody trials and despite knowing that Oxford believed otherwise and properly refused to fund the second tranche of its credit facility for that express reason.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 73 because the Court dismissed all related claims with prejudice.

74.     Deprived by MabVax and Defendants of knowledge of Oxford's rejection of MabVax, Grander Holdings made additional investments in MabVax and the other Plaintiffs invested as well. Plaintiffs would not have made any of the following additional investments had they known that MabVax requested funding from Oxford and was denied:

| Plaintiff/Investor | Amount | Date |
|---|---|---|
| Grander Holdings 401K | $1,000,000 | 8/17/2016 |
| Grander Holdings | $350,000 | 5/2/2017 |
| Grander Holdings 401K | $150,000 | 5/18/2017 |

| | | |
|---|---|---|
| Grander Holdings 401K | $250,000 | 8/21/2017 |
| M. Brauser | $250,000 | 9/14/2017 |
| M. Brauser | $249,700 | 9/22/2017 |
| M. Brauser | $200,000 | 10/10/2017 |
| Grander Holdings 401K | $250,000 | 2/6/2018 |
| Brauser Family Trust | $75,000 | 2/6/2018 |
| B. Brauser | $50,000 | 2/6/2018 |
| D. Brauser | $50,000 | 2/6/2018 |
| G. Brauser | $50,000 | 2/6/2018 |
| J. Brauser | $50,000 | 2/6/2018 |
| Grander Holdings 401K | $100,000 | 5/11/2018 |
| B. Brauser | $20,000 | 5/11/2018 |
| D. Brauser | $20,000 | 5/11/2018 |
| G. Brauser | $20,000 | 5/11/2018 |
| J. Brauser | $20,000 | 5/11/2018 |
| **TOTAL** | **$3,154,700** | |

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 74 because the Court dismissed all related claims with prejudice.

75.     All of Plaintiffs' investments made after May 12, 2017, were made pursuant to a series of public filings—many of which incorporate by reference several other publicly-filed documents—that all contain the same material misstatement concerning the Oxford loan: "The Option to draw the second $5 million expired on September 30, 2016."

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 75 because the Court dismissed all related claims with prejudice.

76.     Defendants signed and caused MabVax to file with the SEC an S-1 on May 12, 2017, that states:

> Effective in January 2016, we entered into a $10 million loan and security agreement with Oxford Finance LLC, or Oxford Finance, that is secured by a lien covering substantially all of our assets, excluding intellectual property. As of December 31, 2016, we had an outstanding principal balance of $5 million. ***The option to draw the second $5 million expired on September 30, 2016.***

(emphasis added).

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 76 because the Court dismissed all related claims with prejudice.

77.     They caused MabVax to state the same information in several sections of the May 12, 2017 S-1:

> **Oxford Loan** – On January 15, 2016, we entered into a loan and security agreement with Oxford Finance LLC (the 'Load [sic] and Security Agreement') providing for senior secured term loans to us in the aggregate principal amount of up to $10,000,000. On January 15, 2016, we received an initial loan of $5,000,000 under the Loan and Security Agreement. ***The option to draw the second $5,000,000 expired on September 30, 2016.***" (emphasis added).

> "On January 15, 2016, we entered into a loan and security agreement with Oxford Finance LLC pursuant to which we had the option to borrow $10,000,000 in two equal tranches of $5,000,000 each (the 'Loan Agreement'). The first tranche of $5,000,000 was funded at close on January 15, 2016 (the 'Term A Loan'). The option to fund the second tranche of $5,000,000 (the 'Term B Loan') was upon the Company achieving positive interim data on the Phase 1 HuMab- 5B1 antibody trial in pancreatic cancer and successfully uplisting to either the NASDAQ Capital Market or NYSE MKT on or before September 30, 2016. ***The option for the Term B Loan expired on September 30, 2016.***" (emphasis added).

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 77 because the Court dismissed all related claims with prejudice.

78.     On July 14, 2017, Hansen and Hanson signed and MabVax filed an S-3 expressly stating that MabVax "filed with the Securities and Exchange Commission, and incorporate by reference," among other things, MabVax's Annual Report on Form 10-K for the fiscal year ended December 31, 2016, that similarly states:

> Effective in January 2016, we entered into a $10 million loan and security agreement with Oxford Finance LLC, or Oxford Finance, that is secured by a lien covering substantially all of our assets, excluding intellectual property. As of December 31, 2016, we had an outstanding principal balance of $5 million. ***The option to draw the second $5,000,000 expired on September 30, 2016.***

(emphasis added)

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 78 because the Court dismissed all related claims with prejudice.

79.     MabVax and Defendants then caused a prospectus supplement to be filed on September 13, 2017 that again provided:

> Effective in January 2016, we entered into a $10 million loan and security agreement with Oxford Finance LLC, or Oxford Finance, that is secured by a lien covering substantially all of our assets, excluding intellectual property. As of December 31, 2016, we had an outstanding principal balance of $5 million. ***The option to draw the second $5 million expired on September 30, 2016***.

(emphasis added).

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 79 because the Court dismissed all related claims with prejudice.

80.     Similarly, another prospectus supplement that Defendants caused MabVax to file dated October 11, 2017, provided:

> Effective in January 2016, we entered into a $10 million loan and security agreement with Oxford Finance LLC, or Oxford Finance, that is secured by a lien covering substantially all of our assets, excluding intellectual property. As of December 31, 2016, we had an outstanding principal balance of $5 million. ***The option to draw the second $5 million expired on September 30, 2016***.

(emphasis added).

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 80 because the Court dismissed all related claims with prejudice.

81.     The Oxford Loan did not expire however...funding was denied.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 81 because the Court dismissed all related claims with prejudice.

82.     Defendants knew that Oxford *refused* to fund the critical loan. To wit, they needed the funding to ensure receipt of their excessive salaries for the foreseeable future.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 82 because the Court dismissed all related claims with prejudice.

83.     Each of MabVax's and Defendants' foregoing statements thus materially omitted that Defendants had not only requested the second $5 million tranche from Oxford, but that Oxford rejected the request due to MabVax's insufficient Phase 1 data.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 83 because the Court dismissed all related claims with prejudice.

84.     As MabVax and Defendants must have known, these statements could and did lead Plaintiffs to believe that MabVax's right to draw down the second $5,000,000 tranche of the Oxford loan had simply expired rather than had been requested and rejected because the Phase 1 data was not positive.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 84 because the Court dismissed all related claims with prejudice.

85.     Had MabVax and Defendants not omitted the material information that MabVax had requested the second tranche from Oxford and same was rejected, Plaintiffs never would have purchased the securities they did because the ultimate disclosure of the negative results of the Phase 1 trials, specifically, and lack of progress of the HuMab-5B1 antibody program evidenced by Oxford's rejection, generally, negatively affected the value of the MabVax securities they purchased once the market learned the truth.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 85 because the Court dismissed all related claims with prejudice.

86.     MabVax's and Defendants' material omission that Oxford had rejected its request for $5 million is directly, causally, and foreseeably related to MabVax's bankruptcy and Plaintiffs'

loss. The fact that the Phase 1 results were not sufficient to secure the second tranche of the Oxford loan demonstrates that MabVax was nowhere near creating a viable product and would be unable to attract further investments, which was critical for MabVax's very survival. MabVax materially omitted this information, which ultimately led to its bankruptcy.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 86 because the Court dismissed all related claims with prejudice.

87.     MabVax's and Defendants' omission that their second loan request had been rejected by Oxford pertained to the very risk that was concealed by this omission. In other words, MabVax's and Defendants' omissions concealed facts that, when fully disclosed, negatively affected the value of Plaintiffs' investment because it was the materialization of this undisclosed risk that ultimately doomed MabVax.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 87 because the Court dismissed all related claims with prejudice.

### E.     Defendants Misrepresented That They Would Take Pay Cuts

88.     Despite the foregoing, Defendants used shareholders' money, including Plaintiffs', to cause MabVax to compensate them $1.45 million in salary, bonus, equity, and other compensation in 2016:

| 2016 EXECUTIVE COMPENSATION | | | | | | |
|---|---|---|---|---|---|---|
| Name | Salary | Bonus | Stock | Options | Other Comp | Total |
| J. David Hansen | $418,438 | $141,400 | | $393,702 | $35,717 | **$989,257.00** |
| Gregory P. Hanson | $276,014 | $62,790 | | $99,743 | $15,055 | **$453,602.00** |

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 88 because the Court dismissed all related claims with prejudice.

89.     While continuing to mislead investors regarding Oxford's refusal to fund the Second Tranche and causing MabVax to pay themselves excessive compensation, Defendants made further misrepresentations related to their compensation in part to obtain even more investments from Plaintiffs and others largely to fin the very compensation they had promised to reduce.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 89 because the Court dismissed all related claims with prejudice.

90.     In April of 2017, Grander Holdings, Grander Holdings 401k, and M. Brauser were considering additional investments into MabVax. Defendants' employment agreements were set to terminate on July 1, 2017.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 90 because the Court dismissed all related claims with prejudice.

91.     With that deadline in mind, in April 2017, Defendants promised that they would take pay cuts in their renewed employment agreements. However, Defendants knew at the time that they made this promise that they would not be taking any pay cuts

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 91 because the Court dismissed all related claims with prejudice.

92.     With Defendants' promise to reduce their compensation after their employment agreements terminated as the backdrop, MabVax sought additional private investment through a Series G financing round and a Series H financing round.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 92 because the Court dismissed all related claims with prejudice.

93.     As Defendants knew, M. Brauser—who controls Grander Holdings—was made aware of this promise. In fact, Defendants intended that their promises to reduce their compensation be communicated to M. Brauser and for Plaintiffs to rely thereupon.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 93 because the Court dismissed all related claims with prejudice.

94.     Hansen laid out the 2017 budget in writing, stating where they could eliminate other costs and defer payments including the promised cuts in his and Hanson's compensation.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 94 because the Court dismissed all related claims with prejudice.

95.     In reliance on the foregoing promise, as well as other material misrepresentations and omissions set forth herein, Grander Holdings 401K purchased 85,714 shares of Series G Preferred Stock and Grander Holdings purchased 200 shares of Series H Preferred Stock.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 95 because the Court dismissed all related claims with prejudice.

96.     In fact, only two months later, on July 3, 2017, the Defendants caused MabVax announce in an 8-K, signed by Hansen in California, that they extended their lavish employment agreements on nearly identical terms to their previous employment agreements:

> On July 1, 2017, MabVax Therapeutics Holdings, Inc. ('Company') entered into renewed employment agreements with each of J. David Hansen, its Chairman, President and Chief Executive Officer, Paul W. Maffuid, Ph.D., its Executive Vice President of Research and Development, and Gregory P. Hanson, CMA, MBA, its Chief Financial Officer (the 'Employment Agreements'). The principal purpose of each of the Employment Agreements was to extend the term of each of Mr. Hansen's, Dr. Maffuid's and Mr. Hanson's (the 'Executives') employment through July 1, 2020 as previously entered into employment agreements terminated or will terminate on July 1, 2017, July 21, 2017 and July 1, 2017, respectively. These agreements supersede and replace the Employment Agreements between the Company and each of Mr. Hansen and Mr. Hanson dated July 1, 2014 and the Employment Agreement between the Company and Dr. Maffuid dated July 21,

2014 (the 'Prior Agreements') and contain substantially the same terms as the Prior Agreements except as set forth below.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 96 because the Court dismissed all related claims with prejudice.

97.     There were no material pay cuts.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 97 because the Court dismissed all related claims with prejudice.

98.     According to the July 3, 2017 8-K, Hansen's base salary was set at $430,000, with bonus eligibility "[u]p to 50% of Base Salary," and Hanson's base salary was set at $310,000, with bonus eligibility "[u]p to 50% of Base Salary." According to an April 2, 2018 10-K, Hansen's base salary in 2016 was $418,438, and Hanson's base salary was $276,014. The April 2, 2018 10-K further shows that Defendants received these full amounts. Hansen's base salary for fiscal year 2017 was $427,876. Hanson's base salary for fiscal year 2017 was $309,312. *See* April 2, 2018 10-K at 52.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 98 because the Court dismissed all related claims with prejudice.

99.     On July 3, 2017, another investor known to Defendants to relay material information to M. Brauser and others, emailed Hansen: "I was surprised to see this filing. It was my understanding that there were going to be pay cuts until the company was fully funded." Hansen responded the next day, copying Hanson, and did not deny that those cuts were discussed, and instead stated:

> Management agreements expired July 1. If either the employee or the company did not renew, then the whole management team is terminated and severance compensation kicks in. Management is meeting weekly with the board to discuss all expense forecasts and capital raising efforts. The board is monitoring all compensation and related expenses closely.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 99 because the Court dismissed all related claims with prejudice.

100.    Had Defendants not misrepresented that they would that they would take pay cuts in their renewed employment agreements, Plaintiffs would not have made the May 2017 securities purchases they did make as the continued payment of excessive compensation packages negatively affected the value of the MabVax securities they purchased.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 100 because the Court dismissed all related claims with prejudice.

101.    Defendants' material misstatements concerning their promise to reduce their compensation at a time when MabVax was starved for cash directly, causally, and foreseeably related to MabVax's bankruptcy and Plaintiffs' loss.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 101 because the Court dismissed all related claims with prejudice.

### F.    Defendants Make Further Material Misrepresentations Regarding Their Employment Agreements

102.    Later, in an August 8, 2017 Letter Agreement that Defendants intended Plaintiffs would be made aware of and that Defendants intended they and rely upon between MabVax and HS Contrarian Investments, LLC ("HSCI"), Defendants caused MabVax to agree that the employment terms of all management including Defendants would be reduced from three years to two years and that they would defer material portions of their salaries for the remainder of the year in consideration for yet another capital raise:

> The employment terms of all management shall be reduced to two years from three years. Management shall defer portions of their salary for the remainder of the year, which shall be paid upon the earlier of completion of the $8,000,000 Financing or a business transaction that represents, or transactions in the aggregate that represent, in excess of $10,000,000.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 102 because the Court dismissed all related claims with prejudice.

103.    In August, September, and October of 2017, based on that Letter Agreement and in reliance of Defendants' promises to reduce the length of employment and defer material portions of their salaries, Grander Holdings 401K and M. Brauser made the following purchases of Common Stock:

| Plaintiff/Investor | Amount | Date |
|---|---|---|
| Grander Holdings 401K | $250,000 | 8/21/2017 |
| M. Brauser | $250,000 | 9/14/2017 |
| M. Brauser | $249,700 | 9/22/2017 |
| M. Brauser | $200,000 | 10/10/2017 |

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 103 because the Court dismissed all related claims with prejudice.

104.    Given the excessive nature of Defendants' salaries and the drag that such salaries were proving to be on MabVax's continued financial viability, the promises contained in the August 8, 2027, Letter Agreement were material to whether Plaintiffs would make further investments in MabVax, and if so, upon what terms.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 104 because the Court dismissed all related claims with prejudice.

105.    Even though MabVax received the funding contemplated in the Letter Agreement, upon information and belief, Defendants forced MabVax to breach those promises as they never reduced their management term length or deferred portions of their salaries. According to the April 2, 2018 10-K, Defendants' salaries were nearly identical to those presented in the July 3, 2017 8-K. In the July 3, 2017 8-K Hansen's base salary was set at $430,000. According to the April 2, 2018 10-K, he received $427,876 in fiscal year 2017, with $448,5000 RSUs, $1,252,905 options,

and $36,634 of "Other Compensation". In the July 3, 2017 8-K, Hanson's base salary was set at $310,000. According to the April 2, 2018 10-K, Hanson received $309,312, with $277,016 RSUs, $224,945 options and $36,928 in "Other Compensation."

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 105 because the Court dismissed all related claims with prejudice.

106.    Defendants—with full control of MabVax—forced MabVax to breach the terms of the August 8, 2017, Letter Agreement as part of their scheme to continue extracting as much compensation and other benefits as possible from their roles as executives of MabVax.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 106 because the Court dismissed all related claims with prejudice.

107.    The foregoing makes it clear that when Defendants caused MabVax to make the representations in the Letter Agreement; that they did not at that time intend to cause MabVax to abide by same.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 107 because the Court dismissed all related claims with prejudice.

108.    Had Defendants not misrepresented what is alleged to have been misrepresented in the Letter Agreement, Plaintiffs would not further investments in MabVax in August, September, or October 2017 as the continued payment of excessive compensation packages negatively affected the value of the MabVax securities they purchased.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 108 because the Court dismissed all related claims with prejudice.

109.    Defendants' material misstatements concerning their promise to reduce their compensation at a time when MabVax was starved for cash directly, causally, and foreseeably related to MabVax's bankruptcy and Plaintiffs' loss.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 109 because the Court dismissed all related claims with prejudice.

### G.    Defendants Made Material Misrepresentations and Omissions Concerning Progress of MabVax's Phase 1 HUMab-5B Antibody Trials to Continue Paying Their Own Exorbitant Salaries

132.    MabVax and Defendants also made material misrepresentations and omissions regarding the progress of MabVax's Phase 1 HuMab-5B Antibody trials.

**ANSWER:**  Defendants deny the allegations in Paragraph 132.

133.    Upon information and belief, on or about February 12, 2018, MabVax suspended patient enrollment in its Phase 1 HuMab-5B Antibody trials due to an "adverse event" involving a trial participant. Defendants were both personally informed by other MabVax executives or the clinicians conducting and overseeing the trials that patient enrolment was being suspended.

**ANSWER:**  Defendants deny the allegations in Paragraph 133.

134.    MabVax and Defendants, however, did not timely disclose this "adverse event;" and they likewise did not timely disclose that MabVax had suspended enrollment in its Phase 1 trials while soliciting yet even more funds from Plaintiffs.

**ANSWER:**  Defendants deny the allegations in Paragraph 134.

135.    In fact, MabVax's and Defendants' first public acknowledgment that anything was wrong with their Phase 1 trials whatsoever appeared in MabVax's Form 10-Q that Defendants both signed for the first quarter of 2018—which Defendants did not file until October 15, 2018, and after they received more than $700,000 from Plaintiffs while intentionally concealing this material fact.

**ANSWER:** Defendants deny the allegations in Paragraph 135.

136.    MabVax and Defendants only then acknowledged the following:

On February 12, 2018, we reported on interim results of the current cohort of the Phase 1 study, in which MVT-5873 was given in combination with nab-paclitaxel and gemcitabine to patients newly diagnosed with CA19-9 positive pancreatic cancer. MVT-5873 at a dose of 0.125 mg/kg when added to first-line chemotherapy was generally well tolerated by all subjects. At that time, all six patients in the current cohort demonstrated measurable tumor reductions, with four patients meeting the criteria for partial response (PR) and two patients meeting the criteria for stable disease (SD). We believe these results further confirm results reported on a portion of the cohort in late 2017. Patient CA19-9 levels, which are a prognostic indicator of the disease state, were markedly reduced in all subjects with this combination therapy. ***Due to adverse events potentially related to the combination of nab-paclitaxel, gemcitabine and MVT-5873, not seen in the monotherapy clinical study, the Company has suspended patient enrollment at the current dose***. We are evaluating plans to enroll additional patients at a lower dose to further explore safety and response in a larger population. (emphasis added)

**ANSWER:** Defendants deny the allegations in Paragraph 136, except state that Paragraph 136 purports to selectively quote and characterize a MabVax SEC filing, to which Defendants refer the Court for its contents.

137.    Despite the suspension of enrollment in their Phase 1 trials in February 2018 (if not earlier), Defendants knowingly continued to paint a misleadingly rosy picture of the progress of the trials in press releases upon which Defendants knew that investors (including Plaintiffs) would rely.

**ANSWER:** Defendants deny the allegations in Paragraph 137.

138.    For example, on February 6, 2018, MabVax and Defendants issued a press release announcing a private placement securities offering. This press release quoted Hansen as stating, "Our clinical trial of MVT-5873 [HuMab-5B1] in combination with chemotherapy has continued to yield encouraging results. . . . Therefore, we intend to allocate a portion of the funds raised to continue patient enrollment at the current treatment level to continue to confirm results seen to date." MabVax and Defendants knowingly and intentionally omitted from this press release the

material information that due to an "adverse event," enrollment in these clinical trials had been suspended.

**ANSWER:** Defendants deny the allegations in Paragraph 138, except state that Paragraph 138 purports to selectively quote from a MabVax press release, to which Defendants refer the Court for its contents.

139.     On April 2, 2018, MabVax and Defendants issued a press release reporting operational and financial results. This press release quoted Hansen as stating, "We have made notable progress with our MVT-5873 [HuMab-5B1] and MVT-1075 clinical programs and are very encouraged with the positive data we have seen to date. We look forward to continuing enrollment in each program and participating in key scientific conferences over the course of 2018[;]" MabVax and Defendants omitted from this press release the material information of which they were aware that due to an "adverse event," enrollment in these clinical trials had been suspended.

**ANSWER:** Defendants deny the allegations in Paragraph 139, except state that Paragraph 139 purports to selectively quote and characterize a MabVax press release, to which Defendants refer the Court for its contents.

140.     On May 3, 2018, MabVax and Defendants issued yet another press release quoting Hansen as stating:

> MabVax intends to use the net proceeds of the offering to fund continuing clinical developments of hits HuMab 5B1 antibody designated MVT-5873 in combination with gemcitabine and nab-paclitaxal in first line therapy for the treatment of patients newly diagnosed with pancreatic cancer. The Company has treated two cohorts of patients for a total of six patients to date in this study; and these funds will enable the Company to continue enrolling up to approximately 10 additional patients with the objective of confirming early observations.

**ANSWER:** Defendants deny the allegations in Paragraph 140, except state that Paragraph 140 purports to selectively quote and characterize a certain MabVax press release, to which Defendants refer the Court for its contents.

141.    Again, MabVax and Defendants knowingly omitted from this press release the material information that, upon information and belief, due to an "adverse event," enrollment in these clinical trials had been suspended.

**ANSWER:** Defendants deny the allegations in Paragraph 141.

142.    At no point before October 15, 2018, did MabVax or Defendants acknowledge in an 8-K or otherwise that an "adverse event" had occurred or that patient enrollment had been suspended despite having knowledge of same.

**ANSWER:** Defendants deny the allegations in Paragraph 142.

143.    Yet between February 6, 2018, and May11, 2018, MabVax and Defendants continued to solicit Plaintiffs for additional investments and succeeded.

**ANSWER:**  Defendants deny the allegations in Paragraph 143, except state that Defendants at times spoke with members of Plaintiffs' illegal investor group about investing in MabVax.

144.    Plaintiffs believed based upon representations Defendants made to them as set forth above, that their investments would be used to fund the Phase 1 trials. Instead, the investments were necessarily used to fund Defendants' compensation because the Phase 1 trials had been suspended.

**ANSWER:** Defendants deny the allegations in Paragraph 144.

145.    Based upon these misrepresentations and omissions, Plaintiffs made the following equity investments in MabVax:

| Plaintiff/Investor | Amount | Date |
|---|---|---|
| Grander Holdings 401K | $250,000 | 2/6/2018 |
| Brauser Family Trust | $75,000 | 2/6/2018 |
| B. Brauser | $50,000 | 2/6/2018 |
| D. Brauser | $50,000 | 2/6/2018 |
| G. Brauser | $50,000 | 2/6/2018 |
| J. Brauser | $50,000 | 2/6/2018 |
| Grander Holdings 401K | $100,000 | 5/11/2018 |
| B. Brauser | $20,000 | 5/11/2018 |
| D. Brauser | $20,000 | 5/11/2018 |
| G. Brauser | $20,000 | 5/11/2018 |
| J. Brauser | $20,000 | 5/11/2018 |

**ANSWER:** Defendants deny the allegations in Paragraph 145, except state that members of Plaintiffs' illegal investor group invested in MabVax.

146. Had Plaintiffs known the truth about MabVAx's and Defendants' material misrepresentations and omissions in MabVax's SEC filings, they would never have made those investments in MabVax because the ultimate disclosure that MabVax suspended its patient enrollment due to "adverse events" negatively affected the value of the MabVax securities they purchased once the market learned the truth because the materialization of the undisclosed risk associated with same ultimately doomed MabVax.

**ANSWER:** Defendants deny the allegations in Paragraph 146.

147. MabVax and Defendants' material misrepresentations and omissions not only induced Plaintiffs' investments, but they also are directly, causally, and foreseeably connected to Plaintiffs' losses. The fact that the Phase 1 trial was not going well, as represented by Defendants, but had in fact been suspended due to an adverse event directly and negatively affected MabVax's ability to continue soliciting the funds in needed to continue as a going concern. This ultimately was the cause of MabVax's bankruptcy and Plaintiffs' injury. Defendants' misstatement and omissions pertained to the very risk that was concealed by their misrepresentations and omissions—that MabVax would fail. In other words, MabVax's and Defendants' misstatements

and omissions concealed facts that negatively affected the value of Plaintiffs' investment because it was the materialization of this undisclosed risk that ultimately doomed MabVax.

**ANSWER:**  Defendants deny the allegations in Paragraph 147.

### H.   Defendants Strip MabVax of its Assets to Line Their Own Pockets and Leave MabVax's Shareholders Holding the Bag

148.     By the end of 2018, the value of Plaintiffs investments into MabVax had been reduced to essentially zero as a direct and proximate result of Defendants material misstatements and omissions once the market learned the truth that, among other things, (a) there never was positive interim data with regards the Phase 1 trials; (b) the Oxford had not expired in September 2016, but instead that the second $5,000,000 tranche had been rejected; (c) Defendants continued to give themselves excessively generous compensation packages; and (d) MabVax had suspended patient enrollment due to "adverse events."

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 148 because the Court dismissed all related claims with prejudice.

149.     Later that year, MabVax and Defendants yet again solicited Plaintiffs for even more money and engaged in a scheme to enrich themselves to Plaintiffs' detriment; but Plaintiffs refused to invest any further money into the company that Defendants had cratered.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 149 because the Court dismissed all related claims with prejudice.

150.     On November 19, 2018, MabVax announced that it had agreed to a term sheet for apparently necessary financing from Triton Investors ("Triton"); and the company filed an S-1 registration statement for that financing with the SEC.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 150 because the Court dismissed all related claims with prejudice.

151.     Rather than close that financing, however, Defendants pursued a different deal that would provide greater personal benefits to themselves.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 151 because the Court dismissed all related claims with prejudice.

152.     On January 4, 2019, MabVax disclosed that it had entered into merger discussions with Oncotelic, Inc., a private cancer immunotherapy company.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 152 because the Court dismissed all related claims with prejudice.

153.     At the same time, Defendants were secretly negotiating a deal with a third party, BioNTech AG ("BioNTech"), that offered to purchase MabVax's remaining assets, as well as hire Hansen and Hanson, as well as provide them with lucrative employment agreements.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 153 because the Court dismissed all related claims with prejudice.

154.     Despite the availability of obtaining supposedly-necessary operating capital from sources that may have ensured MabVax's continued viability after Plaintiffs and other stockholders refused to throw good money after bad, Defendants chose the option that benefited them personally.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 154 because the Court dismissed all related claims with prejudice.

155.     On February 28, 2019, Defendants caused MabVax to secretly borrow money from BioNTech and thereafter enter into an Asset Purchase Agreement on March 20, 2019, whereby MabVax agreed to sell its assets.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 155 because the Court dismissed all related claims with prejudice.

156.    The day after, Defendants placed Mabvax into a pre-packaged Chapter 11 bankruptcy.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 156 because the Court dismissed all related claims with prejudice.

157.    The Asset Purchase Agreement was conditional upon Defendants receiving employment contracts with BioNTech.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 157 because the Court dismissed all related claims with prejudice.

158.    Rather than accept the financing Triton offered or pursue a merger with Oncotelic, Defendants purposefully pushed the company into bankruptcy while simultaneously enriching themselves as they had done throughout the whole time Defendants solicited Plaintiffs' investments.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 158 because the Court dismissed all related claims with prejudice.

159.    All conditions precedent to the maintenance of this action have occurred, been waived, or have otherwise been fulfilled.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 159 because the Court dismissed all related claims with prejudice.

## COUNT I
### Violations of Sections 25400(d) and 25500 of the California Corporations Code

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 through 159 above, and further allege:

**ANSWER:** Defendants repeat and incorporate by reference each response set forth above.

160.    This claim is asserted against the Defendants on behalf of Plaintiffs, which purchased MabVax securities throughout 2016, 2017, and 2018.

**ANSWER:**  Defendants deny the allegations in Paragraph 160, except state that Paragraph 160 purports to characterize Plaintiffs' claims, to which no response is required.

161.    Defendants willfully carried out a plan, scheme, and course of conduct that was intended to and did deceive Plaintiffs as investors in MabVax, as alleged herein.

**ANSWER:**  Defendants deny the allegations in Paragraph 161.

162.    Defendants made or materially participated in the act of making statements that, at the time and in the light of the circumstances under which they was made, were false and misleading with respect to a material fact, or omitted to state material facts necessary in order to make their statements, in the light of the circumstances under which they were made, not misleading, with the purpose of inducing Plaintiffs to purchase MabVax securities that Defendants were selling.

**ANSWER:**  Defendants deny the allegations in Paragraph 162.

163.    Plaintiff's allege this claim based on Defendants' materially-misleading statements or omissions including that:

(a)    Mabvax had requested and Oxford had rejected MabVax's request for an additional $5,000,000 based on MabVax's inability to show positive interim data with regards to the Phase 1 trial discussed herein; and

(b)    that patient enrollment in the Phase 1 trial had been suspended as a result of an "adverse event."

**ANSWER:** Defendants deny the allegations in Paragraph 163, except state that Paragraph 163 purports to characterize Plaintiffs' claims, to which no response is required.

164.    All of these statements and omissions, and many other communications, were made by Defendants in California, at the headquarters of MabVax.

**ANSWER:** Defendants deny the allegations in Paragraph 164.

165.    Defendants knew, or recklessly disregarded, that their misstatements and omissions were false and misleading when made. Such material misstatements and omissions were made knowingly or recklessly and for the purpose of and effect of concealing information from Plaintiffs to secure their investments. At the time MabVax and Defendants made the misstatements or omissions, they were aware of (or had access to) the facts regarding the Oxford Loan and Phase 1 that they misrepresented or omitted.

**ANSWER:** Defendants deny the allegations in Paragraph 165.

166.    Defendants, with the willful intent to defraud, intended that that their misstatements and omissions had the unlawful purpose of inducing Plaintiffs into purchasing securities. The Defendants had actual knowledge that Plaintiffs would not invest if they were told the truth of any one of the above statements.

**ANSWER:** Defendants deny the allegations in Paragraph 166.

167.    The Defendants were top officers and controlling persons of MabVax, and had direct involvement in its day-to-day operations. The material omissions from MabVax's public written and verbal solicitations that were made to Plaintiffs in connection with the investments was the collective action of the Defendants. The Defendants were each involved in drafting, producing, reviewing, and/or disseminating the documents at issue in this action and made verbal representations to the Plaintiffs as well.

**ANSWER:**  Defendants deny the allegations in Paragraph 167, except state that Defendants were MabVax officers.

168.    The Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth in this Complaint as all such facts were readily available to them. The Defendants' material misrepresentations and omissions were done knowingly and recklessly and for the purpose and effect of concealing information from the solicited investors in order to secure their investments.

**ANSWER:**  Defendants deny the allegations in Paragraph 168.

169.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, and in reliance on that information, the Plaintiffs invested in Mabvax as alleged above. Plaintiffs would not have made their investments and suffered the economic loss associated with making their investment into MabVax had the true information been timely disclosed. Plaintiffs would not have purchased MabVax shares, including at the prices they paid, or at all, had they been aware of Defendants' fraudulent course of conduct. Further, Defendants' misstatements and omissions directly and proximately caused Plaintiffs' losses because the material misrepresentations and omissions were pertinent to circumstances that ultimately culminated to cause MabVax to enter bankruptcy after directly and proximately causing the value of Plaintiffs' investments to plummet and thereby damage Plaintiffs.

**ANSWER:**  Defendants deny the allegations in Paragraph 169.

170.    Defendants' misstatement and omissions pertained to the very risk that was concealed by their misrepresentations and omissions. Defendants' misstatements and omissions concealed facts that negatively affected the value of Plaintiffs' investment because it was the materialization of this undisclosed risk that ultimately doomed MabVax.

**ANSWER:** Defendants deny the allegations in Paragraph 170.

171.     As a direct and proximate result of the wrongful conduct of the Defendants, Plaintiffs suffered damages in connection with their investments, and their loss was directly and proximately caused by Defendants' wrongful conduct.

**ANSWER:** Defendants deny the allegations in Paragraph 171.

## COUNT II
### Violations of Sections 25401, 25501, 25504, and 25504.1 of the California Corporations Code Based Upon MabVax's Violations of Sections 25401 and 25501

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 through 159 above, and further allege:

**ANSWER:** Defendants repeat and incorporate by reference each response set forth above.

172.     This claim is asserted against the Defendants on behalf of Plaintiffs, which each purchased MabVax securities throughout 2016, 2017, and 2018.

**ANSWER:** Defendants deny the allegations in Paragraph 172, except state that Paragraph 172 purports to characterize Plaintiffs' claims, to which no response is required.

173.     It is based on MabVax's and Defendants' materially-misleading statements or omissions including that:

(c)     Mabvax had requested and Oxford had rejected MabVax's request for an additional $5,000,000 based on MabVax's inability to show positive interim data with regards to the Phase 1 trial discussed herein; and

(d)     that patient enrollment in the Phase 1 trial had been suspended as a result of an "adverse event."

**ANSWER:** Defendants deny the allegations in Paragraph 173, except state that Paragraph 173 purports to characterize Plaintiffs' claims, to which no response is required.

174.    Each of the related misrepresentations and omissions were made by MabVax and Defendants in California at MabVax's headquarters.

**ANSWER:**  Defendants deny the allegations in Paragraph 174.

175.    By virtue of their high-level positions within MabVax, participation in and awareness of MabVax's operations, direct involvement in the day-to-day operations of MabVax, and communications with MabVax's investors, the Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of MabVax, including the content and dissemination of the statements that Plaintiffs contend are false and misleading. Each of the Defendants had access to the MabVax's public filings and had the ability to prevent the issuance of the false statements and material omission or cause such misleading statements and omissions to be corrected. For example, Hansen signed the January 30, 2018, Form 8-K in California. Hanson signed certain filings as well in California. The May 12, 2017 S-1 and July 14, 2017 S-3, which were deficient and materially omitted information that caused Plaintiffs to invest, was signed by both Defendants in California.

**ANSWER:**  Defendants deny the allegations in Paragraph 175, except state that Defendants made many decisions in their capacities as MabVax officers.

176.    Both Defendants retained significant managerial power in MabVax. Defendants regularly negotiated contracts with Plaintiffs on MabVax's behalf, explained MabVax's corporate strategy to Plaintiffs, solicited investors on MabVax's behalf, hired employees, and discussed potential board members. In short, Defendants directly control MabVax and materially aided and assisted MabVax in the conduct that gives rise to every cause of action in the Complaint.

**ANSWER:**  Defendants deny the allegations in Paragraph 176, except state that Defendants took many actions in their capacities as MabVax officers.

177.    MabVax's material misstatements and omissions constitute primary violations of Section 25401 of the California Corporations Code, establishing its liability under Section 25501, because MabVax—from and in California—sold and offered to sell securities to Plaintiffs by means of those material misrepresentations and omissions.

**ANSWER:**  Defendants deny the allegations in Paragraph 177.

178.    Defendants are liable under Section 25504 of the California Corporations Code because MabVax is liable under Section 25501 for its violations of Section 25401 at a time when both Defendants controlled it. Moreover, Hansen was a principal executive officer and a director of MabVax; and both Defendants materially aided in MabVax's acts and transactions constituting violations of Section 25401.

**ANSWER:**   Defendants deny the allegations in Paragraph 178, except state that (i) Paragraph 178 states a legal conclusion to which no response is required; (ii) Paragraph 178 purports to characterize Plaintiffs' claims, to which no response is required; and (iii) Hansen was an officer and director of MabVax.

179.    Defendants are also liable under Section 25504.1 of the California Corporations Code because MabVax is liable under Section 25501 as a result of its violations of Section 25401 and both Defendants materially assisted MabVax in those violations with the intent to deceive or defraud.

**ANSWER:**   Defendants deny the allegations in Paragraph 179, except state that (i) Paragraph 179 states a legal conclusion to which no response is required; and (ii) Paragraph 179 purports to characterize Plaintiffs' claims, to which no response is required.

180.     Each of the Defendants had access to the MabVax's public filings and had the ability to prevent the issuance of the false statements and material omission or cause such misleading statements and omissions to be corrected.

**ANSWER:**   Defendants deny the allegations in Paragraph 180, except state that Defendants had access to MabVax's public filings.

181.     Hansen and Hanson signed the various SEC filings at issue containing material misrepresentations and omissions in California. MabVax issued the SEC filings at issue containing material and misrepresentations and omissions from its headquarters in California.

**ANSWER:**  Defendants deny the allegations in Paragraph 181.

182.     Both Defendants retained significant managerial power in MabVax. Defendants regularly negotiated contracts with Plaintiffs on MabVax's behalf, explained MabVax's corporate strategy to Plaintiffs, solicited investors on MabVax's behalf, hired and fired employees, and discussed potential board members. In short, Defendants directly controlled MabVax and materially aided and assisted MabVax in the conduct that gives rise to this cause of action (and every cause of action in this Complaint).

**ANSWER:**   Defendants deny the allegations in Paragraph 182, except state that Defendants took many actions in their capacities as MabVax officers.

183.     Defendants made untrue statements of material facts and omitted to state material facts that were necessary to make those statements, in the light of the circumstances under which the statements were made, not misleading. The material omissions from MabVax's public written and verbal solicitations that were made to Plaintiffs in connection with the investments was the collective action of the Defendants. The Defendants were each involved in drafting, producing,

reviewing, and/or disseminating the documents at issue in this action and made materially false verbal representations to the Plaintiffs as well.

**ANSWER:** Defendants deny the allegations in Paragraph 183, except state that Defendants were involved in the creation and/or dissemination of certain MabVax documents.

1.     Defendants knew (or were reckless in disregarding) that at the time they were inducing Plaintiffs to invest in MabVax that they were making material misrepresentations and omitting material facts related to the Oxford Loan and Phase 1 that Plaintiffs were entitled to know, that they would want to know, and that would impact Plaintiffs' decision to invest in MabVax. When they did so, Defendants were aware of (or had ready access to) the very facts that they misrepresented and misleadingly omitted.

**ANSWER:** Defendants deny the allegations in what is incorrectly labeled as Paragraph 1.

184.     MabVax and Defendants intended that Plaintiffs would rely on Defendants' material misrepresentations and omissions and invest in MabVax.

**ANSWER:** Defendants deny the allegations in Paragraph 184.

185.     In reliance and as a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the Plaintiffs invested in the above investments. Plaintiffs would not have made their investments and suffered the economic loss associated with making their investment into MabVax had the true information been disclosed. Plaintiffs' reliance upon these statements was reasonable. Further, Defendants' material misstatements and omissions directly caused Plaintiffs' loss.

**ANSWER:** Defendants deny the allegations in Paragraph 185, except state that Paragraph 185 states a legal conclusion to which no response is required.

186.    Defendants' misstatements and omissions pertained to the very risk that was concealed by their misrepresentations and omissions. Defendants' misstatements and omissions concealed facts that negatively affected the value of Plaintiffs' investment because it was the materialization of this undisclosed risk that ultimately doomed MabVax.

**ANSWER:**  Defendants deny the allegations in Paragraph 186, except state that Paragraph 186 states a legal conclusion to which no response is required.

187.    As a direct and proximate result of the MabVax's and Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their purchases or acquisition of MabVax stock.

**ANSWER:**  Defendants deny the allegations in Paragraph 187, except state that Paragraph 187 states a legal conclusion to which no response is required.

### COUNT III[4]
### Fraudulent Inducement

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1through 159 above, and further allege:

**ANSWER:** Defendants repeat and incorporate by reference each response set forth above.

188.    This claim is asserted against the Defendants on behalf of Plaintiffs, who both purchased MabVax securities throughout 2016, 2017, and 2018.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 188 and Footnote 4 because the Court dismissed Count III with prejudice.

189.    The Defendants made materially false representations to Plaintiffs. The Defendants were top officers and controlling persons of MabVax, and had direct involvement in its day-to-day operations. The material omissions from MabVax's public written and verbal solicitations that

---

[4] Plaintiffs include the remaining causes of action despite the Court's dismissal of same for purposes of appeal.

were made to Plaintiffs in connection with the investments was the collective action of the Defendants. The Defendants were each involved in drafting, producing, reviewing, and/or disseminating the documents at issue in this action and made materially false verbal representations to the Plaintiffs as well.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 189 because the Court dismissed Count III with prejudice.

190.    Defendants knew that at the time they were inducing Plaintiffs to invest in MabVax that they were omitting material facts that Plaintiffs were entitled to know, that they would want to know, and that would impact Plaintiffs' decision to invest in MabVax.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 190 because the Court dismissed Count III with prejudice.

191.    Defendants intended that Plaintiffs would rely on Defendants' material misrepresentations and omissions and invest in MabVax.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 191 because the Court dismissed Count III with prejudice.

192.    In reliance and as a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the Plaintiffs invested in the above investments. Plaintiffs would not have made their investments and suffered the economic loss associated with making their investment into MabVax had the true information been disclosed. Plaintiffs' reliance upon these statements was reasonable.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 192 because the Court dismissed Count III with prejudice.

193.    As a direct and proximate result of the wrongful conduct of the Defendants, Plaintiffs suffered damages in connection with their investments.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 193 because the Court dismissed Count III with prejudice.

194.    Defendants' misstatement and omissions pertained to the very risk that was concealed by their misrepresentations and omissions. Defendants' misstatements and omissions concealed facts that negatively affected the value of Plaintiffs' investment because it was the materialization of this undisclosed risk that ultimately doomed MabVax.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 194 because the Court dismissed Count III with prejudice.

### COUNT IV
### Common Law Fraud

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 through 159 above, and further allege:

**ANSWER:** Defendants repeat and incorporate by reference each response set forth above.

195.    This claim is asserted against the Defendants on behalf of Plaintiffs, which purchased MabVax securities throughout 2016, 2017, and 2018.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 195 because the Court dismissed Count IV with prejudice.

196.    The Defendants made materially false representations to Plaintiffs. The Defendants were top officers and controlling persons of MabVax, and had direct involvement in its day-to-day operations. The material omissions from MabVax's public written and verbal solicitations that were made to Plaintiffs in connection with the investments was the collective action of the Defendants. The Defendants were each involved in drafting, producing, reviewing, and/or

disseminating the documents at issue in this action and made materially false verbal representations to the Plaintiffs as well.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 196 because the Court dismissed Count IV with prejudice.

197.    Defendants knew that at the time they were inducing Plaintiffs to invest in MabVax that they were omitting material facts that Plaintiffs were entitled to know, that they would want to know, and that would impact Plaintiffs' decision to invest in MabVax.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 197 because the Court dismissed Count IV with prejudice.

198.    Defendants intended that Plaintiffs would rely on Defendants' material misrepresentations and omissions and invest in MabVax.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 198 because the Court dismissed Count IV with prejudice.

199.    In reliance and as a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the Plaintiffs invested in the above investments. Plaintiffs would not have made their investments and suffered the economic loss associated with making their investment into MabVax had the true information been disclosed. Plaintiffs' reliance upon these statements was reasonable.

**ANSWER:** Defendants state that no response is required to the allegations in Paragraph 199 because the Court dismissed Count IV with prejudice.

200.    As a direct and proximate result of the wrongful conduct of the Defendants, Plaintiffs suffered damages in connection with their investments.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 200 because the Court dismissed Count IV with prejudice.

201.    Defendants' misstatement and omissions pertained to the very risk that was concealed by their misrepresentations and omissions. Defendants' misstatements and omissions concealed facts that negatively affected the value of Plaintiffs' investment because it was the materialization of this undisclosed risk that ultimately doomed MabVax.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 201 because the Court dismissed Count IV with prejudice.

202.    Defendants material misstatements and omissions directly and proximately caused Plaintiffs' economic loss. The very pieces of information that Defendants made misleading statements about or omitted from Plaintiffs were the factors that caused the demise of MabVax and the Plaintiffs to suffer losses.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 202 because the Court dismissed Count IV with prejudice.

**COUNT V**
**Common Law Negligent Misrepresentation**

Plaintiffs re-allege, and adopt by reference herein, Paragraphs 1 through 159 above, and further allege:

**ANSWER:** Defendants repeat and incorporate by reference each response set forth above.

203.    The relationship between Plaintiffs and Defendants constituted a special relationship in which Plaintiffs reposed in Defendants deep trust, dependence, confidence, counsel, and reliance such that a fiduciary relationship was established.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 203 because the Court dismissed Count V with prejudice.

204.    Defendants knew that Plaintiffs would and did rely and depend on Defendants representations and judgments with regard to the funds Plaintiffs invested in MabVax and, in so doing, Defendants undertook Plaintiffs' trust and confidence and Defendants, by their words and action, undertook and assumed a duty to advise, counsel and protect Plaintiffs.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 204 because the Court dismissed Count V with prejudice.

205.    Plaintiffs at all times relied upon Defendants' representations, financial judgment and decision-making with regard to MabVax and Plaintiffs' decision to invest in MabVax.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 205 because the Court dismissed Count V with prejudice.

206.    Defendants were all aware of Plaintiffs' reliance, dependence upon, and trust of them as principals of MabVax.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 206 because the Court dismissed Count V with prejudice.

207.    The Defendants made materially false representations to Plaintiffs. The Defendants were top officers and controlling persons of MabVax, and had direct involvement in its day-to-day operations. The material omissions from MabVax's public written and verbal solicitations that were made to Plaintiffs in connection with the investments was the collective action of the Defendants. The Defendants were each involved in drafting, producing, reviewing, and/or disseminating the documents at issue in this action and made material verbal misrepresentations to the Plaintiffs as well.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 207 because the Court dismissed Count V with prejudice.

208.    In reliance and as a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the Plaintiffs invested in the above investments. Plaintiffs would not have made their investments and suffered the economic loss associated with making their investment into MabVax had the true information been disclosed. Plaintiffs' reliance upon these statements was reasonable.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 208 because the Court dismissed Count V with prejudice.

209.    As a direct and proximate result of the wrongful conduct of the Defendants, Plaintiffs suffered damages in connection with their investments.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 209 because the Court dismissed Count V with prejudice.

210.    Defendants' material misstatements and omissions directly and proximately caused Plaintiffs' economic loss. The very pieces of information that Defendants made misleading statements about or omitted from Plaintiffs were the factors that caused the demise of MabVax and the Plaintiffs to suffer losses.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 210 because the Court dismissed Count V with prejudice.

211.    Defendants' misstatement and omissions pertained to the very risk that was concealed by their misrepresentations and omissions. In other words, Defendants' misstatements and omissions concealed facts that negatively affected the value of Plaintiffs' investment because it was the materialization of this undisclosed risk that ultimately doomed MabVax.

**ANSWER:**  Defendants state that no response is required to the allegations in Paragraph 211 because the Court dismissed Count V with prejudice.

## DEFENSES

By setting forth these defenses, Defendants do not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiffs. Nothing stated herein is intended or shall be construed as an admission that any particular issue or subject matter is relevant to Plaintiffs' allegations. Defendants may have additional, but currently unidentified, defenses available. Defendants reserve the right to assert additional defenses that are revealed by further investigation and discovery.

## FIRST DEFENSE

1.     The Fifth Amended Complaint ("Complaint") fails to state a claim upon which relief can be granted against Defendants, in whole or in part.

## SECOND DEFENSE

2.     The Complaint fails to identify any material undisclosed information or any misstatement of material fact.

## THIRD DEFENSE

3.     Plaintiffs' claims are barred, in whole or in part, because any damages they allege to have sustained were caused by the acts and/or omissions of persons other than the Defendants and over whom the Defendants had no control.

## FOURTH DEFENSE

4.     Plaintiffs' claims against the Defendants are barred in whole or in part by their own actions, or omissions.

## FIFTH DEFENSE

5.     Plaintiffs have failed to plead their claims against Defendants with particularity.

## SIXTH DEFENSE

6.      Defendants are not liable to Plaintiffs because Defendants did not make any false or misleading statements of material fact or omissions of material fact, Defendants bespoke caution about the risks of investing in MabVax, and Defendants are not responsible in law or fact for any alleged false or misleading statement or omission of material fact by others.

## SEVENTH DEFENSE

7.      Defendants are not liable to Plaintiffs because any alleged misstatements by Defendants were forward-looking statements and/or contained sufficient cautionary language and risk disclosure.

## EIGHTH DEFENSE

8.       Defendants are not liable to Plaintiffs because they had no duty to disclose any facts allegedly not disclosed.

## NINTH DEFENSE

9.      Defendants are not liable to Plaintiffs because any alleged misrepresentations or omissions for which the Defendants are allegedly responsible were not material.

## TENTH DEFENSE

10.     Defendants are not liable to Plaintiffs because Plaintiffs' alleged losses were not actually or proximately caused by the Defendants.

## ELEVENTH DEFENSE

11.     Plaintiffs' claims are barred in whole or in part by laches, equitable estoppel, waiver, and/or other related equitable doctrines.

## TWELFTH DEFENSE

12.     Plaintiffs' claims are barred because they did not allege actual, direct, or individual reliance upon any statements allegedly made by Defendants.

## THIRTEENTH DEFENSE

13.     Neither Defendant is liable for any statement not made by him.

## FOURTEENTH DEFENSE

14.     Plaintiffs would be unjustly enriched if allowed to recover on the Complaint.

## FIFTEENTH DEFENSE

15.     The claims alleged in the Complaint are barred, in whole or in part, by the applicable statute of limitations.

## SIXTEENTH DEFENSE

16.     Plaintiffs are not entitled to the relief sought by virtue of their own unclean hands.

## SEVENTEENTH DEFENSE

17.     Defendants acted at all times in good faith and had no knowledge, and were not reckless in not knowing, that any alleged statement or omission was false or misleading.

## RESERVATION OF RIGHTS

18.     Defendants reserve the right to assert additional defenses that may present themselves during these proceedings and hereby reserve the right to amend their Answer to assert any such defenses.

Respectfully submitted,

Dated:  May 25, 2022                              COOLEY LLP

                                                  /s/  Andrew D. Goldstein
                                                  Andrew D. Goldstein (agoldstein@cooley.com)
                                                  Peter M. Adams *(pro hac vice)*
                                                  Linh K. Nguyen *(pro hac vice)*
                                                  Heather M. Speers *(pro hac vice)*
                                                  4401 Eastgate Mall
                                                  San Diego, California 92121
                                                  Telephone: (858) 550-6000
                                                  Email: kfukumura@cooley.com
                                                  Email: padams@cooley.com
                                                  Email: lknguyen@cooley.com
                                                  Email: hspeers@cooley.com

                                                  Ian Shapiro (4002408)
                                                  Brian M. French (5262498)
                                                  55 Hudson Yards, 44th Floor
                                                  New York, New York 10001
                                                  Telephone: (212) 479-6374
                                                  Email: ishapiro@cooley.com
                                                  Email: bfrench@cooley.com

                                                  Andrew D. Goldstein (4585675)
                                                  1299 Pennsylvania Avenue, NW Suite 700
                                                  Washington, DC 20004-2400
                                                  Telephone: (202) 842-7805
                                                  Email: agoldstein@cooley.com

                                                  *Attorneys for Defendants John David Hansen
                                                  and Gregory P. Hanson*