## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARRY C. HONIG, GRQ CONSULTANTS, INC., GRQ CONSULTANTS, INC. 401K, GRQ CONSULTANTS, INC. ROTH 401K FBO BARRY HONIG, GRQ CONSULTANTS, INC. ROTH 401K FBO RENEE HONIG, HS CONTRARIAN INVESTMENTS, LLC, ROBERT S. COLMAN, and ROBERT S. COLMAN TRUST UDT 3/13/85,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN DAVID HANSEN and GREGORY P. HANSON,<br><br>Defendants. | Case No. 1:20-cv-05872-AKH (Lead Case)<br><br>**GRANDER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT** |
| GRANDER HOLDINGS, INC., GRANDER HOLDINGS, INC. 401K PSP, BRAUSER FAMILY TRUST 2008, MICHAEL BRAUSER, DANIEL BRAUSER, BENJAMIN BRAUSER, GREGORY BRAUSER, and JOSHUA BRAUSER,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN DAVID HANSEN and GREGORY P. HANSON,<br><br>Defendants. | Case No. 1:20-cv-08618-AKH |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

## TABLE OF CONTENTS

I. INTRODUCTION ...............................................................................................................1

II. PROCEDURAL BACKGROUND.....................................................................................2

III. ARGUMENT......................................................................................................................7

IV. CONCLUSION.................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

Cases

*Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano*, 2005 WL 1706490, at *3 (S.D.N.Y.

July 21, 2005).................................................................................................................................. 11
*Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ............................................. 9, 10
*Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994).......................................................... 9
*Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962) .......................... 8
*Haider v. Lyft, Inc.*, 2022 WL 1500673, at *1 (S.D.N.Y. May 11, 2022) ................................... 11
*Milanese v. Rust-Oleum Corp.,* 244 F.3d 104, 110 (2d Cir. 2001).................................................. 8
*Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 284 (2d Cir. 2000).......................... 10
*Panzella v. Skou*, 471 F. Supp. 303, 305 (S.D.N.Y.1979) .............................................................. 9
*Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) ...................................... 8
*Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991).............................................. 8
*State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981).......................... 9
*United States v. Continental Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989) .. 10
*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ............... 11
*Williams v. Citigroup Inc.,* 659 F.3d 208, 212-13 (2d Cir. 2011).................................................. 7

**Statutes**

Section 25400(d), *et seq.* of the California Corporations Code ..................................................... 3

iii

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

Plaintiffs, Grander Holdings, Inc., Grander Holdings, Inc. 401k PSP, Brauser Family Trust 2008, Michael Brauser, Daniel Brauser, Benjamin Brauser, Gregory Brauser, and Joshua Brauser (collectively the "**Grander Plaintiffs**"), through undersigned counsel and pursuant to Federal Rules of Civil Procedure 15(a) and Local Civil Rule 6.3, file this Memorandum of Law in Support of their Motion for Leave to File a Sixth Amended Complaint, and state:

## I.   INTRODUCTION

In its Order Granting in Part and Denying in Part Motion to Dismiss, the Court found that the Grander Plaintiffs sufficiently alleged their Fifth Amended Complaint all of the elements necessary to state a claim for violations of two California statutes. It specifically found that the Grander Plaintiffs sufficiently alleged that Defendants, John David Hansen and Gregory P. Hanson (collectively the "**Defendants**") "failure to disclose an adverse event and trial enrollment suspension are actionable but only as to the investments made after the misleading press releases [dated April 2, 2018 and May 3, 2018] but prior to the corrective disclosure on October 15, 2018" was actionable. (ECF No. 66).

After the Grander Plaintiffs filed their Fifth Amended Complaint, and before this Court entered its Order, the Grander Plaintiffs learned of new, previously non-public evidence that revealed the adverse events began earlier than previously known (in 2016) and were much more numerous than the Grander Plaintiffs were able to previously allege. This information was reveled during the deposition of two former high-level officers of MabVax including Defendant, David Hansen. Those depositions occurred on January 17 and April 28, 2022, in a separate lawsuit pending in California that MabVax initiated. The treasure trove of new evidence includes that there patients in MabVax's clinical trials suffered *more than 200 adverse events*—including more than forty considered "severe" (potentially requiring hospitalization) or

"life threatening"—that began to appear in mid-2016 and continued through 2017 into 2018.

Defendants failed to disclose this critical information to investors and purposefully made misrepresentations to induce investments from the Grander Plaintiffs and others such as that the relevant treatment was "safe" and "well-tolerated" by the "majority" of patients. The Grander Plaintiffs were unaware of this additional, damning evidence until their recent receipt of same. Given the Court's prior ruling and because this newly discovered evidence revealed that many additional (earlier) representations were false for substantially the same reason as the Court already determined were adequately to be false, the Grander Plaintiffs seek to file a Sixth Amended Complaint (the "**SAC**"), that eliminates prior factual allegations and includes many more actionable misrepresentations.[1]

This Court previously stated: "Sometimes it takes a long time to get [a complaint] right."[2] Now is one of those times; and the Grander Plaintiffs' delay in doing so was the result of Defendants purposeful concealment of the poor safety data that arose during MabVax's clinical trial that led to the suspension of that trial, MabVax's collapse, and the Grander Plaintiff's losses. This Court should accordingly permit them to file their proposed Sixth Amended Complaint in the interest of justice.

## II.   PROCEDURAL BACKGROUND

The Grander Plaintiffs filed their initial Complaint on October 15, 2020 (ECF No. 1). On November 10, 2020, the Court consolidated this action with civil case number 20-cv-05872. (ECF No. 17). The Grander Plaintiffs thereafter filed their First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) on January 13, 2021 (ECF No. 24). Defendants

---

[1] The proposed Sixth Amended Complaint is attached to the Declaration of Justin B. Kaplan filed concurrently herewith.
[2] Transcript from February 24, 2022, Hearing, at 42:20-21.

sought dismissal of both actions shortly thereafter.

The Court ordered the Grander Plaintiffs to amend their jurisdictional allegations on August 9, 2021. (ECF No. 33). They did when they filed their Second Amended Complaint. (ECF No. 34). The Grander Plaintiffs also included additional substantive allegations; and as a result, the Court struck their Second Amended Complaint, directing them to file an amended pleading that conformed with the Court's prior order. (ECF No. 36). The Grander Plaintiffs accordingly filed their Third Amended Complaint. (ECF No. 37). Due to a filing error, the Grander Plaintiffs had to re-file their pleading as a Fourth Amended Complaint. (ECF No. 39).

The Court dismissed the Granter Plaintiffs' Fourth Amended Complaint on October 6, 2021 (ECF No. 41) and entered an amended order directing the Clerk of Court to close both actions two days thereafter. (ECF No. 42). Judgment was entered on October 12, 2021. (ECF No. 43).

The Grander Plaintiffs sought leave to amend (ECF No. 46); and the Court granted same and vacate the judgement on November 30, 2021. (ECF No. 50). The Grander Plaintiffs accordingly filed their Fifth Amended Complaint ("**FAC**") on December 3, 2021. (ECF No. 52). Defendants moved to dismiss again on December 22, 2021. Oral argument was held on February 24, 2022.

On April 27, 2022, the Court granted in part and denied in part Defendants' dismissal motion (the "**April 27th Order**"). (ECF No. 66). In its April 27th Order, the Court specifically found that the Grander Plaintiffs sufficiently alleged two causes of action in their Fifth Amended Complaint for securities fraud arising under Section 25400(d), *et seq.* of the California Corporations Code, to the extent that those causes of action were based upon Defendants' statements concerning MabVax's clinical trial because statements made during 2018 were

materially misleading as to the progress of the Phase 1 clinical trial given the failure to disclose that patients in the trial had suffered one or more adverse events that caused the trial to be suspended. Instead of disclosing that negative information, Defendants caused MabVax to issue statements in 2018 touting "positive" data from the trial and soliciting funding for further patient enrollment. The Court specifically found that the complaint plausibly alleged material misrepresentations, Defendants' scienter, and loss causation under a "materialization of the risk" theory:

> Plaintiffs allege that if the adverse event and trial enrollment suspension had been disclosed earlier, the disclosure would have prevented Defendants from securing further funding and ruined the Company. Defendants withheld this information from the market, enabling them to solicit further investments from Plaintiffs. Indeed, Plaintiffs invested in May 2018 based upon the reported strength of the progress in the clinical trials and without knowledge of the enrollment suspension. In October 2018, however, the Company issued a corrective disclosure, which revealed the adverse event and suspension. This caused Defendants to be unable to raise further funds and forced MabVax into bankruptcy. Thus, when Mab Vax issued its corrective disclosure, the risk that Defendants sought to conceal (that Mab Vax did not have a viable product) materialized, causing the company to fail and rendering Plaintiffs' investments worthless.

*See* April 27th Order at p. 13. The Court, however, dismissed the Grander Plaintiffs' claims predicated on statements that the Defendants made concerning the reasons why the second tranche of a loan from Oxford Finance LLC to MabVax was not funded:

> I find that Plaintiffs' claims based upon the Oxford Loan statements are not actionable and dismiss them with prejudice. However, I find that Plaintiffs' claims based upon Defendants' failure to disclose the adverse event and trial enrollment suspension are actionable but only as to the investments made after the misleading press releases but prior to the corrective disclosure on October 15, 2018.

*Id.* at pp. 9-10, 14.

Defendant, David Hansen ("**Hansen**"), was deposed on January 17, 2022 (after the Grander Plaintiffs had filed their FAC and after Defendants filed their dismissal motion) in an

action that MabVax initiated in a California state court.[3] During his deposition, Hansen revealed for the first time that that MabVax's antibody treatment caused at least four patients in the Clinical Trial to suffer a serious lung condition called pneumonitis, that the incidents of pneumonitis began surfacing in early 2017, and that the prevalence of pneumonitis is what caused MabVax to later suspend the trial in 2018 among other salient facts. None of those facts had previously been disclosed publicly by Defendants or MabVax.[4]

The new revelations did not end there, however. At the April 28, 2022, deposition of MabVax's former Vice President of Pharmaceutical Development, Paul Maffuid, provided significant additional detail regarding the pneumonitis incidents that Hansen had only recently revealed and also disclosed material information concerning adverse events that patients in the clinical trial suffered as early as 2016.

The Grander Plaintiffs accordingly seek to file a proposed Sixth Amended Complaint that now identifies as least twelve disclosures or representations made from early August 2016 through February 6, 2017, that were either materially false or misleading. In their SAC, the Grander Plaintiffs respectfully request to add those statements and omission to those 2018 statements that the Court already has found sufficient to provide the basis for two causes of action.

The newly-discovered factual allegations are succinctly described as follows: MabVax began enrolling patients in its clinical trial in March 2016. Thirty-two patients participated in the first part of the clinical trial during which they were administered a regimen of MabVax's

---

[3] MabVax Therapeutics Holdings, Inc. v. Honig, et al., Superior Court of California, County of San Diego case no. 37-2019-00018398-CU-SL-CTL.
[4] Counsel for the plaintiffs in the consolidated action, Robert Weber, previewed some of this newly discovered information to the Court during its February 24, 2022 hearing. (ECF. No. 64 at 32:17-35:16).

antibody for a period of weeks that varied from patient to patient. Almost from the beginning, those thirty-two patients suffered a disturbingly high number of adverse events, including liver damage, hyperglycemia, hypoalbuminemia, anemia, vomiting and nausea. Between April 2016 and May 2017, those 32 patients suffered an astronomical 172 adverse events in all; at least 27 of those adverse events were graded "Grade 3 – Severe" (which indicates significant symptoms requiring hospitalization or invasive intervention) or "Grade 4 – Life-Threatening." The vast majority of patients (over 80%) suffered adverse events, and approximately half the patients suffered "severe" or "life threatening" events.

MabVax initiated a second part of its clinical trial in late 2016, in which its antibody was combined with a medically standard chemotherapy. The safety results were even worse. During late 2016 and early January 2017, the first three patients encountered 24 adverse events, with seven of those adverse events graded Grade 3 (Severe) or Grade 4 (Life Threatening). Those patients' reactions were so bad that their treatment was discontinued, and MabVax decided to reduce by a factor of eight (from 1 mg per kg down to 0.125 mg per kg) the antibody dose administered to future patients. That did not resolve the safety issues, however.

In early 2017, two of the next three patients developed Grade 3 (Severe) pneumonitis, an inflammation of lung tissue that had the potential to cause irreversible lung damage. Another patient in a subsequent cohort suffered Grade 4 (Life Threatening) pneumonitis in early 2018. Incidents of pneumonitis associated with standard chemotherapy are rare (studies indicate it is less than 5% of patients), so for three of six patients to encounter the serious condition when administered standard chemotherapy in combination with an already-reduced dosage of MabVax's antibody was alarming. When a fourth patient developed pneumonitis in 2018, MabVax was forced to suspend the trial.

NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

While Defendants knew most of these facts as they arose, they did not disclose that information to Plaintiffs and even made representations that painted a different picture. In early August 2016, ahead of the Grander Holdings 401K's $1,000,000 investment in MabVax, Defendants made representations that MabVax's clinical trials had delivered "promising" results and were "positive." They also caused MabVax to issue multiple public statements in November 2016, and February, March, May, July, September and October 2017, that calcimined the interim trial results were "positive;" that "safety . . . has been established at three dose levels;" and that the treatment as administered to certain patients was "well tolerated." All of the foregoing statements were materially false or misleading—and the Grander Plaintiffs relied on them when purchasing MabVax securities starting in August 2016 and continuing through May 2018.

In addition to the new allegations concerning Defendants' false statements in 2016 and 2017, the Grander Plaintiffs' proposed Sixth Amended Complaint eliminates prior allegations concerning the Oxford Finance loan, and allegations concerning Defendants' alleged interference with an agreement to enact corporate pay cuts, both of which the Court previously ruled were deficient. Leave to file it should be granted for the reasons set forth below.

### III.   ARGUMENT

Courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This is consistent with the Second Circuit's "strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.,* 659 F.3d 208, 212-13 (2d Cir. 2011). As the Supreme Court has stated: "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). Thus: "This Circuit strongly favors liberal grant of an opportunity to replead after dismissal of a

complaint under Rule 12(b)(6)." *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006). "[I]t is rare that such leave should be denied. . ." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (citing *Foman,* 371 U.S. 1478, 182). This is particularly true because leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.,* 244 F.3d 104, 110 (2d Cir. 2001) (reversing denial of leave to amend).

"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Id.; see also Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) ("[T]his Circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)."). None of the foregoing exist here. Not only was the recent revelation of the existence new facts upon which the allegations in the proposed Sixth Amended Complaint relayed to the Court approximately one month after discovery,[5] "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (citing *State Teachers Retirement Bd. v. Fluor Corp*., 654 F.2d 843, 856 (2d Cir.1981)).

"The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." *Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994) (citing *Panzella v. Skou*, 471 F. Supp. 303, 305 (S.D.N.Y.1979)). Defendants cannot.

---

[5] *See* ECF No. 64 at 35:9-16.

NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com

Undue prejudice depends on whether the new aspects of the proposed pleading would "'(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Block*, 988 F.2d at 350). None of those factors exist here. This action is in an early stage—the Court has not (as of the date of this filing) held an initial conference or set a discovery schedule. Nor has there been any real delay in filing Motion, as the new evidence upon which the proposed SAC relies was revealed only recently. Moreover, Discovery is only just commencing. Defendants have ample time to tailor their discovery requests to address all statements that the Grander Plaintiffs allege to be false, including the new ones. Adding these statements to the action does not even change who the likely witnesses or document custodians will be as the same individuals with knowledge regarding the alleged 2018 alleged misstatements and omissions have knowledge regarding the 2016 and 2017 ones. In any event, "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *United States v. Continental Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989). Nor is Defendants' burden of establishing "undue prejudice" satisfied by assertions that an amendment will require the expenditure of additional time, effort, or money. *See Block*, 988 F.2d at 351.

Defendants similarly cannot reasonably argue that the proposed amendment would be futile. Futility exists only where the proposed amendment would not withstand a Ruel 12(b)(6) motion. *Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano*, 2005 WL 1706490, at *3 (S.D.N.Y. July 21, 2005). The new fraudulent statements and omissions that the Grander Plaintiffs seek to add are substantively identical to other statements which have survived a prior

9

12(b)(6) motion, and which the Court has found "plausibly allege a material representation." *See* April 27th Order at 11.

Though the Grander Plaintiffs are cognizant of the Court's statement in the April 27th Order that it dismissal was *with prejudice* "as to all remaining Plaintiffs and claims" beyond investments made on May 2, 8 or 11," they respectfully suggest that reconsideration is warranted here given the Grander Plaintiffs obtained newly discovered evidence recently (and in part after entry of the April 27th Order). *See, e.g.*, *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("the availability of new evidence" is one of the major, long-established grounds for granting reconsideration); *Haider v. Lyft, Inc.*, 2022 WL 1500673, at *1 (S.D.N.Y. May 11, 2022) (same).

## IV. CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion for Leave to File an Amended Complaint and, to the extent necessary reconsider the April 27th Order in the event that it included a "with prejudice" dismissal.

Dated: May 25, 2022
      Miami, Florida

Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH**
*Attorneys for Plaintiffs*
2 South Biscayne Blvd.
21st Floor
Miami, Florida 33131
Tel: (305) 373-9436
Fax: (305) 373-9443

By: */s/ Justin B. Kaplan*
Fla. Bar No. 0033725

*Justin.Kaplan@nelsonmullins.com*
*(Admitted pro hac vice)*

10

**NELSON MULLINS RILEY & SCARBOROUGH | ATTORNEYS AND COUNSELORS AT LAW**
One Biscayne Tower | 2 South Biscayne Blvd. 21st Floor Miami, FL 33131 | T: 305.373.9400 | F: 305.373.9443 | nelsonmullins.com